COATSWORTH et al. v. SCHOELLKOPF et al.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. LEASE—NOTICE TO TERMINATE—SUFFICIENCY.

A covenant of a lease requiring the landlord to give the tenant notice of his election to terminate the lease, and take possession of the premises, and pay for improvements made by the tenant, and providing that an omission to give such notice shall be deemed a renewal for a term, is not complied with by notifying the tenant that the landlord elects to terminate the lease and take possession of the premises under the lease, without stating that he intends to pay for improvements.

2. SAME—COVENANTS RUNNING WITH THE LAND.

A lease to lessee, his personal representatives and assigns, provided that on nonpayment of the rent the lessors, their heirs, personal representatives, or assigns, could re-enter and expel the lessee, his heirs, personal representatives, and assigns, and on lessee's, his heirs or assigns, performing the covenants by them to be performed, they should quietly enjoy and occupy the demised premises for the term, with the buildings to be erected thereon by the lessee. The lessee covenanted to make certain improvements, and on termination of the term the lessor was to pay him the appraised value thereof, the last two covenants not mentioning the heirs, representatives, or assigns of the parties. *Held*, that the covenants to pay for improvements made by the lessee ran with the land.

3. SAME—CONSTRUCTION BY PARTIES.

By carrying out for a long term of years the provisions of a lease, the successors of the parties construed covenants thereof as being binding on them, and the court will consider this in determining what are the rights of the successors thereunder.

4. SAME—IMPROVEMENTS BY TENANT—RIGHT TO PAYMENT—EQUITABLE RELIEF.

Where one takes premises subject to a lease of which he receives the benefits with notice of the lessor's personal covenant to pay the tenant for improvements on the termination of the lease, equity will compel him, as a condition precedent of terminating it, to pay for such improvements, since in equity such covenant was a charge on the land.

5. SAME—LIEN OF TENANT FOR IMPROVEMENTS.

A lease which requires the tenant to erect certain buildings, the value of which is to be paid him by the lessor on the termination of the lease, gives the tenant an ownership in the premises to the extent of the value of the buildings so erected by him, and an equitable lien for such value on the whole premises.

Appeal from special term, Erie county.

Summary proceedings by Tamar M. Coatsworth and others against Louis Schoellkopf and others. There was a judgment for plaintiffs, and defendants appeal. Reversed.

On the 30th day of December, 1897, the petitioners, the Coatsworths and Jackman, presented their petition to the county judge of Erie county instituting summary proceedings under title 2 of chapter 17 of the Code of Civil Procedure to recover possession of certain premises in the city of Buffalo having a frontage of 48 feet on Main street, 62 feet on Washington street, and 288 feet on Quay street, in that city. The petition, alleging that the petitioners were the landlords of the Schoellkopfs and their undertenants occupying the premises, and that they (the tenants) were holding over and continuing in possession of the said premises after the expiration of their term. The tenants answered in the proceeding denying the petition, and alleging that they held and occupied the premises by virtue of a lease executed between Caleb Coatsworth and John Coatsworth, the persons under whom the petitioners claimed as heirs at law and devisees, and Thomas J. Dudley, under whom the tenants claimed and asserted the right of possession in the premises. Such proceedings were had before the county judge that he issued a warrant dis-

possessing the tenants, and placing the petitioners in possession of the premises. From the final order made in the proceeding the said Louis Schoellkopf and Alfred Schoellkopf, tenants, on the 5th day of April, 1898, appealed to this court, In the lease referred to, the Coatsworths, Caleb and John, with their wives, constituted the parties of the first part, and Thomas J. Dudley the party of the second part, and the lease provided: "That the said party of the first part, for and in consideration of the covenants and agreements hereinafter contained on the part of the said party of the second part, and also in consideration of the sum of one dollar to them in hand paid  *  *  *,  had demised, let, and leased, and by these presents do demise, let, and lease, unto the said party of the second part, and to his executors, administrators, and assigns, for and during the term hereinafter mentioned [the premises, describing them]; and to have and to hold the said piece or parcel of land unto the said party of the second part, his executors, administrators, and assigns, from the first day of April, one thousand eight hundred and forty-seven, being the day of the date hereof, for and during and until the full end and term of fifteen years from thence next ensuing, and fully to be complete and ended." The rent was stipulated at increasing amounts per year until it reached the annual sum of $700, payable on the 1st of October and April in each year; and, if default on the part of the second party should occur in the payment of the rent for 30 days, "then and from thenceforth it shall and may be lawful for the said party of the first part, their heirs, executors, administrators, or assigns, into or on the said demised premises, or any part thereof, in the name of the whole, to enter, and the same premises to have again, to possess and enjoy as in their first and former estate or estates; and the said party of the second part, his executors, administrators, or assigns, from thence utterly to expel, remove, and put out, anything in these presents contained to the contrary thereof notwithstanding." The party of the second part covenanted to pay the rent as provided in the lease, and all taxes and assessments that might be imposed upon the premises. and the lease further provided: "And the said party of the second part further covenants and agrees to and with the said party of the first part that he will, within three years from the first day of April, 1847, at his own proper cost and expense, erect good, substantial brick buildings suitable for commercial and business purposes on all of said demised premises, covering the premises hereby demised, or covering them as nearly as is practical for business purposes, with such buildings as aforesaid. And the party of the first part covenants and agrees to and with the party of the second part, his executors, administrators, and assigns, that at the expiration of the term above created, unless they give the notice hereinafter provided for for the purpose of renewing and continuing this lease (upon the said party of the second part having kept and performed all these covenants and agreements herein contained on his part), they will pay the said party of the second part, his executors, administrators, or assigns, the value of the said buildings that may then be standing upon said demised premises, with the vaults and sidewalks that shall have been constructed on said premises, as the said value shall then be; such value to be ascertained in the way hereinafter provided." Provision is then made to ascertain the value of the buildings, etc., by appraisal by three disinterested men. "And the said parties of the first part further covenant and agree to and with the party of the second part, his executors, administrators, and assigns, that in case they do not give the party of the second part, his executors, administrators, or assigns, at least six months' notice in writing before the first day of April, 1862, of their election to take possession of the said demised premises at the expiration of this lease, and to pay for said buildings, vaults. and sidewalks at such appraised value, that then, and in that event, they will renew and continue this present demise and lease, and such omission to give said notice shall be deemed and taken to be a renewal and continuance of this demise and lease for five years from the first day of April, 1862, upon the same terms and conditions hereinafter expressed, except that the rent for the said renewed and continued term shall be seven hundred dollars per annum, payable in the same way as the last five years' rents above provided for. And they also covenant and agree, as aforesaid, that, so often as they shall fail to give said six months' notice before the termination of such renewed term, they will renew the said demise

and lease, and such failure shall be deemed a renewal thereof for five years from the termination thereof on the same terms and conditions as the said first renewal and continuance. And the party of the second part covenants with the party of the first part that, in case of the renewal and continuance of this lease and demise as aforesaid, he will accept and continue the same on the terms aforesaid, and will pay the said parties of the first part, their executors, administrators, or assigns, the rents hereinbefore mentioned on such continuance and renewal of seven hundred dollars per annum for each year of such renewal and continuance, and pay all taxes and assessments assessed as aforesaid during such renewal and continuance so long and until such renewals and continuance shall end. And the said party of the first part hereby covenants with the said party of the second part, his executors, administrators, and assigns, that the said party of the second part, his executors, administrators, and assigns, paying the rent and performing all and singular the covenants and agreements in these presents contained on his part to be performed and kept, shall and may lawfully, peaceably, and quietly have, hold, enjoy, and occupy the said demised premises, with the buildings thereon to be erected, for and during the said term aforesaid, hereinbefore granted without lawful let, suit, trouble, eviction, molestation, expulsion, or interruption of or by them, the said party of the first part, their heirs or assigns, or by any other person whomsoever lawfully claiming or to claim by, from, or under them, or either of them, or by or with any of their consents, privity, or procurement." The lease was recorded in Erie county clerk's office April 20, 1847. As provided in the lease, the lessee, Thomas J. Dudley, constructed upon the leased premises substantial brick buildings, several stories high, as near as practicable covering the land demised, at large expense; and the value of such buildings at the time of the eviction under the warrant of the county judge was at least $25,000. The lessee and his assigns and successors in interest paid promptly the stipulated rent and the taxes assessed upon the premises, and performed all the conditions by the lessee to be performed as provided in the lease, up to the time of the commencement of the summary proceedings, except the rent due October 1, 1897, which was duly tendered by appellants; and the lessors and their heirs and devisees received the stipulated rent except the rent due October 1, 1897, which was refused, and have never served the notice required by the lease, but have treated the tenancy as renewed every five years under the provisions of the lease, until, on the 6th of August, 1896, the petitioners served upon the Schoellkopfs a notice in writing, addressed to them, as follows: "Sirs: You will take notice that we, as owners of premises bounded by Main street, Quay street, Washington street, and the Hamburg Canal, and more particularly described in a certain lease bearing date April 1, 1847, executed by Caleb Coatsworth and Jane F., his wife, John Coatsworth and Jane Coatsworth, of the city of Buffalo, New York, of the first part, and Thomas J. Dudley, of the same place of residence, of the second part, and recorded in Erie county clerk's office in Liber 106 of Deeds, at page 356, April 20, 1849, hereby elect to take possession of the said demised premises pursuant to the provisions of said lease on the first day of April, 1897, and hereby notify you that said lease shall be terminated on that day." The last renewal of five years terminated on the 1st day of April, 1897, and a new term of five years commenced at that time, as claimed by the Schoellkopfs (the appellants), because the notice given was insufficient to terminate the tenancy, and the tenancy could not be terminated without payment to them for the buildings constructed on the premises. The counsel for the petitioners claimed before the county judge that the petitioners were entitled to the possession of the property, including the buildings and improvements, without making any compensation for the buildings, and none has been made or offered, and such was his position upon the argument of this appeal. The appellants went into possession of the leased premises in the spring of 1892, having obtained all the rights and privileges of the original lessee in the lease through various conveyances, transfers, and assignments, and the several persons through whom such interest passed to the appellants; and the appellants paid rent to the original lessors, or to their heirs and devisees (the petitioners), and were recognized by them as tenants and occupants of the premises under the lease.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLEN-NAN, and SPRING, JJ.

John L. Romer, for appellants.

John Cunneen, for respondents.

WARD, J. The final order of the county judge of Erie county in the summary proceedings directed that a warrant issue to remove the appellants and their undertenants from the leased premises, and that the petitioners be put in full possession thereof, and awarded costs to the petitioners, "excluding from decision, however, the validity of the claims of the said Louis Schoellkopf and Alfred Schoellkopf to compensation for the value of the buildings, vaults, and sidewalks on said premises, without prejudice to their rights to institute such actions at law as they may be advised to test the validity of the said claim." The county judge, therefore, assumed to dispose of important rights of the appellants under the lease in this summary manner, leaving the appellants to their legal remedies, if they possessed any, after their eviction from the premises. Unless the notice to surrender possession was sufficient to terminate the tenancy, a new tenancy of five years commenced on the 1st of April, 1897. The appellants were lawfully in possession of the premises, and the order appealed from was erroneous.

The lease prescribes what the notice shall contain. It shall state the election of the lessors to take possession of the demised premises at the expiration of the lease, and "to pay for said buildings, vaults, and sidewalks at such appraised value." "And such omission to give said notice shall be deemed and taken to be a renewal and continuance of this demise at least for five years from the said first day of April, 1862, upon the same terms and conditions hereinbefore expressed, except that the rent for said renewed and continued term shall be seven hundred dollars per annum, payable in the same way as the last five years' rent above provided; * * * that so often as they [the lessors] shall fail to give said six months' notice before the termination of such renewed term, they will renew the said demise and lease, and such failure shall be deemed a renewal thereof for five years from the termination thereof on the same terms and conditions as the first renewal and continuance." Recurring to the notice that was in fact given, it will be seen that it fails to comply with the requisitions of the lease. It is simply an election to take possession of the demised premises; in effect, a notice to quit. It is true that the expression is used that the petitioners will take possession pursuant to the provisions of the lease, and it is claimed by the respondents' counsel that, if they are responsible for the value of the buildings, that the notice means that they will pay for them under the provisions of the lease. This statement is not equivalent to the statement required by the lease to be in the notice that the respondents would pay for the buildings, vaults, and sidewalks; and the claim thus made seems inconsistent with the position assumed by the learned counsel for the respondents before the county judge and upon the argument of this appeal that the respondents were not liable to pay for the buildings, and that such payment was not a condition precedent to the right of the re-

spondents to recover the possession of the premises. As this notice was clearly insufficient to terminate the tenancy, and as a case was not made before the county judge for dispossessing the appellants, we would be justified in stopping here, and reversing the order appealed from; but, as the question is in the case whether the covenant to pay for the buildings binds the respondents, and whether the appellants can enforce the covenant against them, we will give it consideration. We shall not attempt at any great extent to discuss the cases bearing upon the question as to what covenants run with the land. It is insisted by the learned counsel for the respondents that, as they were not the original lessors, Albert T. Coatsworth being the sole heir at law of John Coatsworth, and taking as such, and Tamar M. Coatsworth and Harriet M. Jackman taking as devisees under the will of Frances Amelia Coatsworth, who was the daughter and devisee of Caleb Coatsworth, the covenant of the original lessors to pay for the buildings is not binding upon the respondents, but was simply the personal covenant of the lessors; that the lessee covenanted for himself personally, and not for his heirs and assigns, that he would erect the buildings; and that the rights of the lessee in the covenants in the lease had not been transmitted, through the mesne conveyances and assignments, to the appellants, and they, therefore, could not enforce the covenant to pay for the buildings. From the record before us we think it appears that the appellants have all the right to enforce the covenants in the lease which were secured by it to the lessee Thomas J. Dudley.

The respondents rely upon the Spencer Case, 5 Coke, 16, where it is held that, where the covenant relates to a thing not in esse, but to be done upon the land demised, the assignee is bound if named, but, if not named, he is not bound; and Tallman v. Coffin, 4 N. Y. 134, which seems to sanction this rule. It is true that in the covenant to pay for the buildings the heirs or assigns are not named in immediate connection with that covenant. It is also true that the heirs or assigns are not named in immediate connection with the lessee's covenant to build; but in construing this lease, and in determining whether the heirs or assigns are bound, we must consider the whole instrument, and the intention of the parties as indicated thereby. In Masury v. Southworth, 9 Ohio St. 341, it was held that a covenant relating to a thing not in esse might run with the land, though the assigns of the covenantor were not expressly named, provided that by equivalent words or a clear intent shown by the whole instrument, it appeared that such was the intention of the parties. And see Mohr v. Parmelee, 43 N. Y. Super. Ct. 330. Where a covenant is for the benefit of an estate demised, it runs with the land, and will extend to the assignee, though he is not named. Woods, Landl. & Ten. p. 502, § 310, and cases cited in note 7. Some of the covenants in the lease on both sides omit the words "heirs or assigns," but these covenants are inseparably connected with other covenants, where the "heirs and assigns" are bound by name, and the whole scheme of the lease contemplates that all its provisions embrace them. A brief reference to these covenants will make this proposition clear. The lease is under seal,.

and the premises are leased to the lessee, "his executors, administrators, and assigns." If the rent is unpaid for 30 days, the lessors, "their heirs, executors, administrators, or assigns," may enter the demised premises, and again repossess and enjoy them as in their first and former estate or estates, and expel the lessee, "his executors, administrators, or assigns," from the premises. And, finally, the lessors, "their heirs or assigns," covenant with the lessee, "his executors, administrators, or assigns," that upon the lessee, his "executors, administrators, and assigns," paying the rent, and performing all and singular the agreements on his part to be performed and kept, they shall lawfully, peaceably, and quietly have, hold, enjoy, and occupy the said demised premises, with the buildings thereon to be erected, for and during the said term. The right of the lessors, their heirs and assigns, to re-enter upon the nonpayment of rent, and the duty of protection to the lessee and his assigns, specified in the concluding covenant, seem to make them parties to all the other covenants which affect and directly concern the estate demised, and establish the privity of the heirs and assigns of both parties to the lease with the covenant as to the buildings. The covenants as to the construction of the buildings and as to the compensation for their value affect the quality, value, and mode of enjoyment of the estate. The buildings conferred an immediate, permanent, and beneficial effect on the land leased, and were indispensable in carrying out the purposes of the demise. The lessors and the lessee had both privity of contract and privity of estate in the buildings which were put upon the land and became a part of the real estate. As is well argued by the learned counsel for the appellants:

"The obligation to pay is imposed upon the same parties who have the right. under the lease, to terminate it. This obligation and this right are not separated, and hence the obligation to pay runs with the land, together with the right to terminate, with which it is inseparably connected."

The failure to give the notice required by the lease has extended the term of the tenancy for 50 years. The original parties to the lease have long since departed this life, and their heirs, assigns, and successors in interest have continued peaceably to carry out the provisions of the lease until the service of the defective notice to which we have referred. These successors in interest have thus admitted that the liabilities and rights under the lease of the original parties devolved upon them, and this is a practical construction on their part in favor of the position here taken that the covenants as to the buildings run with the land; and, when the words of a grant are ambiguous, the courts will call in aid the acts done under it as a clue to the intention of the parties. French v. Carhart, 1 N. Y. 102; Chicago v. Sheldon, 9 Wall. 50; Topliff v. Topliff, 122 U. S. 131, 7 Sup. Ct. 1057. The learned counsel for the respondents cites Cole v. Hughes, 54 N. Y. 444; Hart v. Lyon, 90 N. Y. 663; Sebald v. Mulholland, 155 N. Y. 455, 50 N. E. 260,—being party-wall cases, in which certain covenants relating to party walls were held to be personal. A careful examination of these cases fails to disclose their applicability to the one before us, but it is difficult to dis-

tinguish some of the conclusions in those cases from the decision of the court of appeals in another party-wall case,—Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. 1097. Judge Martin, however, in Sebald v. Mulholland, supra, attempts to distinguish Mott v. Oppenheimer from the other cases. Judges O'Brien and Bartlett, in Sebald v. Mulholland, did not vote, and Gray, J., who concurred, said:

"I concur with my Brother Martin in his opinion, because the contract in this case requires a different construction from that placed upon the contract in the case of Mott v. Oppenheimer. In that case the question was upon the contract,—whether any interest in the land was raised by force of its covenants,—and we thought that that was the effect of the instrument."

It is entirely clear that the covenants as to the buildings affected or concerned an interest in the land demised, and hence come within the exact ruling of Mott v. Oppenheimer. But, should we assume that the covenant to pay for the buildings, in the light of the Spencer Case, and some of the cases cited, does not technically run with the land, so that an action at law could be maintained against the respondents by the appellants to recover damages for its breach, still, in equity, the covenant becomes a ·charge upon the leased property, which can be enforced by the appellants against the respondents, they having had notice of the covenant, and of the contents of the lease, both actual and constructive, and received benefits under the lease; and equity will not permit the respondents to have the benefits flowing from the lease, and repudiate its obligations. A result so unjust cannot be tolerated. Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335, and authorities there cited. Trustees v. Lynch, 70 N. Y. 440, and cases cited. In the last case Judge Allen says, at page 450:

"It would be unreasonable and unconscientious to hold the grantee absolved from the covenant in equity for the technical reason assigned that it did not run with the land so as to give an action at law. A distinguished judge answered a like objection in a similar case by saying, in substance, that, if an action at law could not be maintained, that was an additional reason for entertaining jurisdiction in equity, and preventing injustice."

Again, at page 451, he says:

"The author of the American note to Spencer's Case, 1 Smith, Lead. Cas. (6th Am. Ed.) 167, recognizes a distinction between the binding obligation at law of covenants not running with the land and the equitable rights recognized and enforced in equity in such cases. He says, speaking of such a covenant, that although the covenant, when regarded as a contract, is binding only between the original parties, yet, in order to give effect to their intention, it may be construed in equity as creating an incorporeal hereditament (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed; and, when this is the case, subsequent assignees will have the right and be subject to the obligations which the title or liability to such an easement creates."

Equity will not permit the appellants to be evicted from the premises, and give the respondents possession thereof, until they have performed the covenant to pay for the buildings. The appellants have an equitable lien on the whole premises until such payment is made, as the appellants, in addition to being tenants, have ownership to the extent of the value of the buildings in the premises de-

mised, and they cannot be deprived of the possession thereof until their rights in the property are adjusted. If the respondents elect to terminate the tenancy, they can only do so by complying with the conditions upon which the tenancy is predicated; and so, whether the possession of the premises was legal or equitable in the appellants, the county judge, in summary proceedings, had no power to remove them.

The order appealed from should be reversed, with costs, and restitution ordered, viz. that the possession of the demised premises should be restored to the appellants.

The foregoing opinion was adopted by the court January 31, 1899. All concur.