In re WEST FARMS ROAD IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 20, 1914.)

1. PUBLIC LANDS (§ 192*)—GRANT—CONSTRUCTION—EFFECT.

A grant by the Governor of the province or colony of New York to Q. and others, as patentees for and on behalf of themselves and their associates, the freeholders and inhabitants of Westchester, vested ownership of the lands in the town in its corporate capacity, and not in the patentees named in the grant, nor in the freeholders and inhabitants individually.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 615, 617, 618; Dec. Dig. § 192.*]

2. NAVIGABLE WATERS (§ 37*)—LAND UNDER WATER—CONVEYANCE—GRANT BY MUNICIPAL CORPORATION.

Where a deed by a municipal corporation described the land as commencing at a point marked on the causeway by Westchester creek, thence running along the creek for a distance "thence by and with" the creek for a distance, and "thence still along by" the creek to a slip, and thence "by and with said slip" to a turn in a wall, it appearing that the creek was navigable, the deed did not convey the land under water to the center of the creek, under the rule that where a municipal corporation owns land under navigable water in its governmental capacity, a deed of the uplands will not pass the adjacent land under the water, unless precise words are employed in the conveyance which clearly indicate the intent to convey such land.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

3. EMINENT DOMAIN (§ 295*)—DAMAGES TO LAND—RIPARIAN RIGHTS.

Where the owner of land bordering on a navigable stream had certain riparian rights in the stream, but did not own the land under water in front of the upland, it would be presumed that the value of such riparian rights was considered and allowed in awarding damages for the value of the upland.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 803; Dec. Dig. § 295.*]

McLaughlin, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from City Court of New York, Special Term.

Application of the City of New York to acquire title to certain lands required for opening the West Farms Road. From a final order confirming the report of a referee as to certain awards made to unknown owners, the City of New York and the Comptroller thereof appeal. Reversed, and motion to pay awards as to two certain lots to Mary C. C. Clark, as administratrix of Thomas S. Ryan, deceased. Denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joel J. Squier, of New York City, for appellants.
Benjamin Trapnell, of New York City, for respondent.

SCOTT, J. The commissioners of estimate and assessment in this proceeding made a substantial award to Thomas S. Ryan for damage parcel No. 234 as shown on the commissioners' map, and also made smaller, but still substantial awards to "unknown owners" for damage parcels Nos. 235 and 236 as shown on said map. The awards for said last-mentioned parcels were claimed both by the city of New York and by Mary C. C. Clark as administratrix with the will annexed of Thomas S. Ryan, deceased. These conflicting claims were referred to a referee who has reported that Mary C. C. Clark, as administratrix, etc., is entitled to receive the awards, and his report to this effect has been confirmed at Special Term. From the order of confirmation this appeal is taken, and the question involved is as to the ownership of the parcels for which the awards were made.

Lot 234 consists of upland fronting on Westchester creek; lots 235 and 236 lie in the bed of said creek in front of said lot 234. Directly to the north of the last-mentioned lot is an ancient causeway crossing said creek. South of that causeway Westchester creek is, and from time immemorial has been, navigable. Parcels 235 and 236 lie under water of that part of the creek which is navigable. The question we have to determine is whether title to those parcels lying thus under the waters of a navigable stream passed to Thomas S. Ryan, under the deed hereinafter mentioned, from the trustees of the town of Westchester.

[1] In 1667 Richard Nicoll, Governor of the province or colony of New York, conveyed to John Quimby and others, as patentees, for and in behalf of themselves and their associates, the freeholders and inhabitants of the town of Westchester, a large tract of land, embracing the lands in question here, and by a description sufficiently comprehensive to include title to the bed of Westchester creek. The effect of this grant undoubtedly was to vest ownership of the lands in the town in its corporate capacity, and not in the patentees named in the grant, nor in the freeholders and inhabitants individually. Lawrence v. Town of Hempstead, 155 N. Y. 297, 49 N. E. 868.

[2] Ryan's title is derived from a deed made to him on August 14, 1878, by the trustees of the town of Westchester, in which the property conveyed is described as follows:

"All that certain lot being and situated in the town of Westchester and known and distinguished as lot No. 20 on a certain map made by William

G. Livingston, surveyor, and dated June 25th, 1878, bounded and described as follows: Beginning at a point on the road leading from Westchester village to Throggs neck at a marked stone, thence running north eighty degrees and forty-five minutes east (N. 80° 45′ E.) along the said road or causeway (so-called) fifty-five and one-half feet (55½ ft.) to a point on said causeway or road, thence running north eighty-five degrees and thirty minutes east (N. 85° 30′ E.) forty-six and one-half feet (46½ ft.) to a point marked on the causeway by Westchester creek thence running along said Westchester creek south four degrees and forty-five minutes east (S. 4° 45′ E.) twenty-four and one-quarter (24¼ ft.) thence by and with Westchester creek *and a certain stone wall sixteen and one half feet* (16½ ft.) thence still along by said Westchester *creek and by said wall south forty-four* degrees east (S. 44° E.) thirty-nine and one-quarter feet (39¼ ft.) to a slip thence by and with said slip south eighty-five degrees and thirty minutes west (S. 85° 30′ W.) thirty feet (30 ft.) thence south sixty-seven and one-half degrees east eighteen and one-half feet (S. 67½° 18½ ft.) to a turn in the wall of the aforesaid mentioned slip thence still along by said wall south eighty-five and one-half degrees west (85½° W.) fifty feet (50 ft.) to the first above mentioned road leading from the town dock thence along the easterly side of said road north six degrees east sixty-six feet (N. 6° 66 ft.) to a marked stone the point and place beginning containing within said bounds fourteen hundredths of an acre (14/100) together with all the right to the water of Westchester creek which lies north of the causeway and the right to dam the same and in keeping floodgates and maintaining a dam across said Westchester creek, where the causeway or road is now located, for the purpose of furnishing water from said pond to drive and work a mill. Together, with all the singular and tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

Ryan conveyed the same property by the same description to William H. Corrigan in 1880, but ultimately, through a series of mesne conveyances all containing identical descriptions, the property was again vested in said Ryan in 1887. The question of his ownership of the lands under water therefore depends upon the terms of the conveyance to him by the trustees of the town of Westchester. It will be observed that so far as Westchester creek is concerned the description of the property conveyed commences at "a point marked on the causeway by Westchester creek"; thence it runs "along said Westchester creek" for a distance; thence "by and with Westchester creek" for another distance; thence "still along by said Westchester creek" to a slip; and thence "by and with said slip" to a turn in the wall.

It is clear that no part of the bed of Westchester creek is explicitly and in terms included within the lines of the descriptions which are all indicated as "by" and "along" the creek and slip. The respondent in effect concedes this much, but she rests her claim to ownership by her testator upon the proposition that by operation of law title to the land under water in front of the upland passed under the descriptions quoted. We may assume for the purposes of this case that this would have been so if the grantor, instead of being a municipal corporation, had been an individual who owned the tideway, and who had bounded the land conveyed by the creek (Smith v. Bartlett, 180 N. Y. 360, 73 N. E. 63; Archibald v. N. Y. C. & H. R. R. R. Co., 157 N. Y. 574, 52 N. E. 567; Matter of the Mayor, 182 N. Y. 361, 75 N. E. 156), or if Westchester creek had been merely a nontidal fresh-water stream, even though navigable in an actual, but not legal, sense (Fulton Light,

Heat & Power Co. v. State of New York, 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. [N. S.] 307).

A different rule, however, obtains where, as in the present case, the conveyance is made by a municipal corporation of land under navigable water, granted to and held by it in its governmental capacity. Such land it holds as trustee for the use of the public and of commerce, and it will not be presumed to have intended to include in its deed of the uplands the adjacent land under water in a navigable stream, unless precise words are employed in the conveyance which clearly indicate the purpose and intent to convey the lands under water and to pass the title thereto. Matter of Mayor, etc., supra; Trustees of Brookhaven v. Strong, 60 N. Y. 56; Sage v. Mayor, etc., 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592; Mayor, etc., v. Hart, 95 N. Y. 443.

[3] Applying this very well-settled rule to the case at bar we are forced to the conclusion that the deed from the trustees of the town of Westchester to Ryan did not convey to the latter title in fee to the land under water adjacent to the upland granted to him. Certain riparian rights he no doubt did acquire and these were probably of value, but it is to be assumed that their value was taken into account in fixing the amount of the award for the upland, parcel 234.

It may also be true, as argued by the respondent, that the awards for parcels 235 and 236, burdened as they were with riparian rights appurtenant to parcel 234, were too large, but that question cannot be dealt with on this appeal.

It is clear that the right given to Ryan to dam the waters of Westchester creek *north* of the causeway adds nothing to respondent's claim of title to lands under water lying *south* of the causeway, and we do not understand that the respondent relies at all upon the grant of this right. From the description of the causeway given in the testimony, it would appear that it marked the head of practicable navigability, that portion of the creek lying south, where the lands in question were situated, being navigable, and that portion lying north of the causeway being unnavigable.

The result is that the order appealed from must be reversed, with $10 costs and disbursements, the motion of respondent denied, with $10 costs, and the awards for damage parcels Nos. 235 and 236 ordered to be paid to the city of New York, as successor to the town of Westchester.

INGRAHAM, P. J., and LAUGHLIN and CLARKE, JJ., concur.

McLAUGHLIN, J. (dissenting). The land described in the deed of conveyance from the trustees of the town of Westchester to Ryan, in my opinion, ran not only to the bank, but to the center of Westchester creek. Smith v. Bartlett, 180 N. Y. 360, 73 N. E. 63. There is nothing in the deed to indicate an intent to reserve the land between high-water mark and the center of the creek, and if such had been the intent, it seems to me appropriate words would have been used for that purpose. Fulton L. H. & P. Co. v. State of New York, 200 N. Y. 400, 94 N. E. 199, 37 L. R. A. (N. S.) 307. This view is also strength-

ened by the fact that the parcel conveyed was for a mill site, which necessarily included the water in the creek required for its full enjoyment.

I, therefore, dissent from the conclusion reached by Mr. Justice SCOTT, and vote to affirm the order appealed from.