CHARLES T. SAMMIS, Plaintiff, *v.* TOWN OF HUNTINGTON, Defendant.

(Supreme Court, Suffolk Special Term, June, 1918.)

Lease — covenants contained in — renewal of — contracts — pleading —
    actions — assignments — evidence — Town Law, § 170.

A complaint alleged that in October, 1866, prior to the enact-
ment of the Town Law, the trustees of the freeholders and
commonalty of the town of Huntington, the defendant, leased
to S. certain lands of which they were the owners in fee for
a term of fifty years at a certain annual rental, with covenant
for a renewal for a like term at such rent as might be agreed
upon between the parties, and, in the event of disagreement as
to the amount of rent, the town would take and pay for all
buildings and erections upon the premises at a value to be
assessed by parties to be chosen, etc. It was further alleged
that the lease was duly assigned to plaintiff and that a part of
the premises had been assigned by plaintiff to a third party;
that prior to the expiration of the lease on October 1, 1916, the
parties considered from time to time the price to be charged
for a renewal of the lease but that they had failed to agree
upon the rental value of the premises. Upon overruling a
demurrer made upon the ground that the complaint, which was
for the enforcement of the covenants, did not state facts
sufficient to constitute a cause of action, *held,* that the part of
the covenant relating to a renewal was practically nugatory and
conferred no substantial right upon either party but the
remaining part of said covenant was in effect an agreement to
purchase the improvements and was binding upon the assignee
of the lessor and the lessee; that the question whether the
action should have been brought against the " trustees " and not
against the town is not so purely a question of law that it
can be decided upon demurrer without any evidence to sus-
tain the same; that the covenant to take and pay for the
improvements creates a charge or lien upon the property
enforcible in equity.

There is nothing in the Town Law which expressly prohibits
the bringing of such an action as the present; the claim sought

to be enforced does not seem to come within the scope of the phrase " town charges generally," nor within the enumerated claims specified in section 170 of the Town Law.

DEMURRER to complaint.

Ackerly & Miles (Rowland Miles, of counsel), for plaintiff.

Willard N. Baylis (Geo. P. Sanborn, of counsel), for defendant.

ASPINALL, J.   The question to be decided herein is whether or not the demurrer interposed by the defendant to the plaintiff's complaint, upon the ground that the same does not state facts sufficient to constitute a cause of action, should be sustained or overruled.

The complaint in substance alleges that at all times referred to therein, prior to the passage of the Town Law, the trustees of the freeholders and commonalty of the town of Huntington were a municipal domestic corporation; that by virtue of the said Town Law, and the various amendments thereof, all the lands, rights and interests therein and all the rights and property of the said trustees were transferred to and became vested in the town of Huntington; that the said town is the successor to and is now the corporate name of said trustees of the freeholders and commonalty of said town; that on the 1st day of October, 1866, the said trustees were the owners in fee of certain lands and premises, and that on said day they leased the land described in said complaint to one Henry J. Scudder for the period of fifty years, at a rental of fifteen dollars per year; that the said lease contained a covenant for a renewal for the term of fifty years further, upon such rent as might be agreed upon between the parties, and in the event of a disagreement as to the amount of said rent the said town will take and pay for all build-

ings and erections upon said premises at a value to be assessed by parties to be chosen, etc. The complaint also alleges that on the 4th day of November, 1892, the said lease was duly assigned to the plaintiff, and that in April, 1895, the plaintiff assigned a part of the premises to the Northport Electric Light Company; that the said lease expired on the 1st day of October, 1916; that prior to the expiration of said lease the parties hereto took up and considered from time to time the price to be charged for a renewal of said lease, but that they have failed to agree upon the rental value of the premises, and this action is therefore brought for the relief prayed for in the complaint.

The agreement to renew for a further period of fifty years at a rental to be agreed upon, and the agreement to take and pay for the improvements in the event of a disagreement as to the rental are contained in a single covenant. Since the act of agreeing upon the rental requires the exercise of a volition, unenforceable in law, the part of the covenant relating to a renewal is practically nugatory and confers no substantial right upon either party. But the remaining portion of the covenant is in effect an agreement to purchase the improvements. Although the phraseology is somewhat involved, the intent is plain that the covenant shall be binding upon the lessors named and also upon their " successors, executors, administrators, heirs and assigns." As I read the covenant it expressly so provided. Expressions are found in the cases to the effect that such a covenant " runs with the land." Whether or not this phrase is applicable to such a covenant, I think it to be the law that such a covenant, relating to something not *in esse* but to be done upon the property, does not bind an assignee of the lessor or the lessee unless specifically named; but that by the use of the words " successor " and " assignee" the assignee

Supreme Court, June, 1918.          [Vol. 104.

is " specifically named " within the rule, and the covenant is binding upon the assignee of the lessor and the lessee. *Coffin* v. *Talman,* 8 N. Y. 463, and cases cited; *Tallman* v. *Coffin,* 4 id. 134 — a former trial involving the same covenant; *Thompson* v. *Rose,* 8 Cow. 266; *Belden* v. *Union Warehouse Co.,* 11 App. Div. 160, 162, 163; *Ovington Bros. Co.* v. *Henshaw,* 47 Misc. Rep. 167. See, also, *Masury* v. *Southworth,* 9 Ohio St. 341, cited in 37 App. Div. 303.

But the defendant contends that the plaintiff is precluded from relief by reason of his act in assigning a fifty-foot strip of land. The argument seems to be that by the assignment in question the plaintiff cannot demand a renewal because the lease is renewable in its entirety, or not at all; that the obligation of the lessors in this respect cannot be split up into " fractions;" and that for the same reason the agreement to purchase the improvements is unenforceable. In its last analysis, the contention is that the covenant in question is indivisible, and a very interesting question of law is here presented. It may be said that the lease does not expressly prohibit the lessor from disposing of the reversion of any part thereof; nor the lessee from assigning his leasehold interest or any part thereof. If the potency of this covenant may be destroyed by the assignment of an inconsiderable interest, under the lease by the lessee, then the converse of the proposition must also be true and it must be held to have been always within the power of the lessors to nullify their own obligation under the covenant by the simple act of transferring a portion of the reversion. Either this result follows, or, in the alternative, the covenant is enforceable by and against the successors and assigns of the original parties in proportion to their respective interests. See *Leiter* v. *Pike,* 127 Ill. 287, 326.

But however this may be, it does not seem to me that the question can be determined upon demurrer purely as a question of law. It is possible that the facts stated might or might not constitute a defense, depending upon the character of the evidence.

Admitting that the effect of the assignment of the fifty-foot strip of land invokes the rule of law contended for by the defendant, might the plaintiff not prove on the trial that the lessors expressly consented to the assignment in question and agreed that it should be without prejudice to the plaintiff's right to demand a renewal of the lease as to the balance of the tract? Might the plaintiff not prove that, in recognition of such agreement, no objection was made on this ground when the parties were negotiating for a renewal? Might he not prove that, had objection been made on this ground, he could have demanded and secured from the assignee a reassignment of the strip of land under a reserved right so to do? And might he not also prove other facts or acts operating by way of waiver or estoppel against the defendant?

The defendant's chief contention however is that the action should have been brought against the " trustees " and not against the town. I do not think that this is so purely a question of law that it can be decided upon demurrer, and without any evidence to sustain the same.

It seems that the lands in the town of Huntington are affected by three colonial grants known as the Nicolls, the Dogan, and the Fletcher patents. The latter, or Fletcher patent of 1694, is principally involved in the determination of the question here presented.

In the Nicolls patent, being the first patent, the grant was to eight persons named as patentees " in behalf of these, and their successors, the Freeholders and

Inhabitants of the said Town, their heirs, successors and assigns, all the land that has already been or hereafter shall be purchased for and on behalf of the Town of Huntington, etc.''

In the case of other patents of that period couched in almost the identical language above quoted, the courts have held that the grant vested '' ownership of the lands in the town in its corporate capacity, and not in the patentees named in the grant, nor in the freeholders and inhabitants individually.'' *Matter of City of New York (West Farms Road)*, 161 App. Div. 530, 532; *Town of Southampton* v. *Mecox Bay Oyster Co.*, 116 N. Y. 1, and cases cited; *North Hempstead* v. *Hempstead*, 2 Wend. 110, 133; *Lawrence* v. *Town of Hempstead*, 155 N. Y. 297, 300; *Denton* v. *Jackson*, 2 Johns. Ch. 320, 324, 325.

But counsel for the defendant attempts to distinguish the Fletcher patent from the Nicolls and other patents, asserting that the former patent created two distinct corporations; the named patentees being one corporation, and the inhabitants of the town being the other, and I understand his contention to be that the title to the lands in question is in the successors to the original incorporated board of trustees considered as a body politic distinct from the town itself.

While this contention is plausible in view of the provisions and language of the patent, it finds no support in any declared reason or purpose to be subserved thereby. The contention necessarily rests upon the theory that the Fletcher patent divested the town, in its corporate capacity, of ownership of the lands and vested the title thereto in another and distinct body politic consisting of the incorporated patentees. It seems to me that an attempt to divest the town of its ownership of the lands in question, granted by the Nicolls patent, would have been an act confiscatory

in character and beyond the power of the colonial governor to accomplish through the instrumentality of the Fletcher patent. *Town of Southampton* v. *Mecox Bay Oyster Co.,* 116 N. Y. 1, 8, 9. But, in my opinion, the Fletcher patent discloses no such intent. On the contrary its character as a confirmatory grant, with certain changes in boundaries, is indicated on its face. It refers to the Nicolls patent to Jonas Wood and others "as patentees, in behalf of themselves and their associates, the Freeholders and Inhabitants of the Town of Huntington, their heirs, successors and assigns, etc." It then recites that Joseph Bayly and others named "in behalf of themselves and the rest of our loving subjects, the Freeholders and Inhabitants of our said Town of Huntington" have by petition, etc., "prayed our grant and confirmation of the premises, so only that the limits and bounds of the said Town of Huntington shall not be as above mentioned, but as hereinafter expressed * * * that is to say * * *." The willingness of the governor to comply with the petition and grant the patent is expressed in the words " and likewise that we would be graciously pleased to make, erect and establish all our loving subjects, the Inhabitants and Freeholders of our said Town of Huntington — into one body politic and corporate in deed and name; which reasonable request we being willing to grant, now know ye, that of our especial grace certain knowledge and mere motion, we have given, granted, ratified and confirmed, and by these presents do for us our heirs and successors give, grant, ratify and confirm unto the said Joseph Bayly (and 6 others named), Freeholders and Inhabitants of our said Town of Huntington, hereby erected and made one body and politic and corporate, and willed and determined to be called by the name of the Trustees of

the Freeholders and Commonalty of our said Town of Huntington, and their successors, all, etc.''

It will also be noticed that the syllabus to *Lowndes* v. *Town of Huntington,* 153 U. S. 1, refers to the Nicolls patent of 1666 as '' confirmed by Governor General Dongan in 1688, and again confirmed, with a change in description, by Governor General Fletcher, in 1694.''

It seems to me, therefore, that the patent itself discloses its character as a confirmatory instrument, and I do not find that it has ever been construed as effecting a radical change in the ownership or title of the lands in question.

However, defendant's contention that the patent did in fact create two distinct bodies politic finds support in the instrument and must be met, if possible, on some logical ground. The provisions in question are as follows: The grant to Joseph Bayly and the other named patentees is followed by the words, '' hereby erected and made one body politic and corporate.'' This is followed later on by a provision to the effect that the '' said freeholders and inhabitants, freemen of our Town of Huntington aforesaid commonly called by the name of the freeholders and inhabitants of our said Town of Huntington, or by whatever name or names they are called or named, and their heirs and successors, forever hence forward, shall be one body corporate and politic in deed and name, etc.''

While these two provisions support the defendant's claim to some extent, yet the force of this contention is weakened by the subsequent provision to the effect that Joseph Bayly and the other patentees shall be '' the first modern trustees and freeholders and commonalty of the Town of Huntington '' to continue until the time that '' others be elected and chosen.''

It thus appears that the entire membership of the corporation composed of the patentees is transplanted

Misc.]                    Supreme Court, June, 1918.

bodily into the corporation consisting of the inhabitants of the town and made its first board of trustees. This seems to me to be inconsistent with an intent that the patentees and the rest of the inhabitants should constitute two separate bodies politic. The intent is twice separately expressed that all the inhabitants shall constitute one body politic and corporate in deed and name. If the original patentees were the " first modern trustees, etc.," of the town in its corporate capacity, why the need of their existence also as a distinct corporate entity? And could all the inhabitants of the town constitute one body politic in name and deed if the patentees, being also inhabitants, in fact constituted another and separate body politic and corporate?

In a note on this patent as found in the records of the town of Huntington, Charles R. Street comments on the instrument as a notable illustration of the tendency of the times to the prolific use of words. This may explain much. The grant under this and similar patents of that period to named patentees and their associates was in itself sufficient to constitute, by implication, the patentees and all the inhabitants a body politic and corporate. *Denton* v. *Jackson,* 2 Johns. Ch. 320, 324, 325.

In my opinion the phraseology of the grant to the patentees, who are described as inhabitants and freeholders, was alone sufficient to constitute all the inhabitants a body corporate. The later provision, in express terms constituting the inhabitants a body politic, may have been merely an unnecessary repetition intended to emphasize by express terms the corporate capacity of the inhabitants, thus obviating the necessity of reaching the same conclusion by implication from the preceding clause containing the grant to the named patentees and their associates. It would

have been a natural and reasonable purpose to remove any doubt that the inhabitants and freeholders constituted a body politic.

I am of the opinion that the introduction of some evidence may have an important bearing in the solution of this question. Has the Fletcher patent ever been construed by any court as creating two separate bodies politic and corporate? During all the intervening years, has it received a practical construction to that effect? During these years has there always been a body of trustees representing the town as a body politic, and a separate and distinct body of trustees representing the other corporation? Has the identity of each corporation as a distinct body politic, independent from the other, been recognized and maintained, in law and in fact, during all the years from 1694 to 1872? And, again, the act of 1872 apparently abolished the trustees of the freeholders and commonalty of the town and in their place constituted the supervisor, the town clerk and the assessor as the board of trustees. What is the scope and effect of this act? Did it relate solely to the trustees of the town in its corporate capacity, or did it also relate to the successors of the original patentees claimed by the defendant to have existed as a separate body politic during all these years? In what manner and how has the succession to the original named patentees, considered as a body politic, been effected from 1694 to the year 1872? Can it be said that the above-named officials, as the board of trustees of the present town, are the successors of the patentees incorporated by the Fletcher patent in 1694, and as such constitute a body politic separate and distinct from the town? Has the membership of the so-called board of incorporated trustees and the board of trustees of the town, each considered as a distinct body corporate, generally consisted of the same or of

different persons during the various periods from 1694? Whether or not two separate and distinct bodies politic have been recognized as existing and have been maintained during all these years seems to me to be largely a matter of evidence, and that such evidence would be an important consideration in determining the point in question. I do not think the question so purely a matter of law that it can be determined upon a demurrer standing alone.

I do not agree with the counsel for the defendant that the action is one at law. The covenant to take and pay for the improvements upon the land creates, it seems to me, a charge or lien upon the property enforceable in equity. The lessee has the right of possession until the covenant is performed. The complaint also alleges that the defendant threatens to oust the plaintiff from the possession of the premises without making any compensation whatever, and absolutely refuses to join in an appraisal in accordance with the terms of the lease. The complaint seems to me, therefore, to state a cause of action for the enforcement of a covenant, with incidental injunctive relief. *Paine* v. *Trinity Church,* 7 Hun, 89, 91; *Matter of Coatsworth,* 37 App. Div. 295, 306; revd., 160 N. Y. 114, 122. Although this case was reversed, the point of law here raised seems to have been recognized both in the opinion below and in the opinion on reversal.

The defendant contends that in any event the plaintiff's remedy is to present his claim to the board of audit; and that any subsequent action on his part lies either in certiorari or mandamus. I do not consider that this claim is tenable.

As already stated in my opinion, the action is equitable in character. I see nothing in the Town Law expressly prohibiting such an action as this, and a claim of this character does not seem to come within

2

Supreme Court, June, 1918.          [Vol. 104.

the scope of the phrase " town charges generally, "
nor within the enumerated claims specified in section
170 of the Town Law.

I do not think that the cases cited by the defendant
on this point are applicable. They are cases relating
to claims or demands against the town arising upon
contracts made for or on behalf of the town as a
political subdivision of the state.

But the present action is equitable in character, and
the lands in question, it seems to me, are not owned by
the town " for usual Town purposes; " such lands are
not owned or possessed by the town as a political divi-
sion or body politic in order to carry its corporate pur-
poses as a political or governmental subdivision of the
state; but they are rather held by the town as a pro-
prietor, and in an individual capacity, as distinguished
from a governmental capacity, and in such a case the
town is entitled to the same remedies for the protec-
tion of its property rights as are available to an indi-
vidual; and, if this be true, it seems to follow that a
town owning land in a proprietary as distinguished
from a corporate capacity must be subject to the same
liabilities as a private person. *Tuma* v. *Piepenbrink,*
160 App. Div. 225, 228; *Town of Hempstead* v. *Law-
rence,* 138 id. 473, 475; *Bridges* v. *Sullivan County,* 92
N. Y. 570.

For these reasons I overrule the demurrer inter-
posed to the complaint, with leave however to the
defendant to withdraw its demurrer and serve an
answer within twenty days.

*Demurrer overruled.*