William M. Huber, Plaintiff, *v.* Harriet Ruby, Defendant.

Supreme Court, Special Term, Nassau County, October 7, 1946.

*Harrison B. Wright* for defendant.

*Carey, Desvernine & Kissam* for plaintiff.

CUFF, J. Motion by defendant to dismiss the complaint for insufficiency. The complaint alleges that: plaintiff and defendant made a written lease for a two-year term beginning October 1, 1940, of residential property located at Baldwin, Nassau County, New York, at an annual rent of $960, payable monthly; that the lease contained the following provision: " 28th. It is also understood and agreed that tenant will have the privilege of renewal for the period of one year from the expiration of this lease by giving notice in writing to the landlord, sixty day's prior to expiration, at a rental price to be agreed upon "; that

beginning September 30, 1942, plaintiff and defendant extended the lease by written agreement each year in the following language: " It is hereby agreed between tenant and landlord named in this lease that all the provisions of said lease will be extended for the period of one year from the date of its expiration "; that by a writing dated May 2, 1946, defendant notified plaintiff that the " lease cannot be renewed beyond September 30th, 1946, as I wish to occupy the house myself with my family ". The complaint demands (a) a declaratory judgment that plaintiff holds as a tenant under the lease until September 30, 1947, and (b) that defendant is enjoined from interfering with plaintiff's occupancy as long as plaintiff pays the $80 a month rent.

The so-called extension provision (paragraph 28th of the lease, above), upon which plaintiff relies, standing alone would be void, as defendant points out, because of its indefinite character (*Tracy* v. *Albany Exchange Co.*, 7 N. Y. 472, 474). Plaintiff argues that the enactment of the Emergency Price Control Act of 1942 (Act, § 2, subd. [b]; U. S. Code, tit. 50, Appendix, § 902, subd. [b]) and regulations promulgated thereunder breathed certainty into that otherwise uncertain extension clause.

Plaintiff did not at any time up to now, seek to avail himself of the extension clause in his lease. This landlord and tenant renewed *the entire* lease, which included the extension clause by their four successive written annual renewals so that when this suit was instituted, and until September 30, 1946, plaintiff held as a tenant of defendant pursuant to the renewed lease, which expressly provides rent of $80 a month. However, defendant's unwillingness to renew the lease at its expiration, on September 30, 1946, and defendant's election instead, to occupy the accommodations herself (and it must be assumed that it will be established) removes plaintiff's occupancy from the protection of the Federal statute (Rent Regulation for Housing in the New York City Defense-Rental Area, § 6, subd. [a], par. [6]; 10 Federal Register 11668). To retain his tenancy, therefore, plaintiff must, for the first time, look to paragraph 28th of the lease — the disputed extension clause. As stated, that extension provision ordinarily would be void for uncertainty. What effect, if any, does the Emergency Price Control Act of 1942 have upon it? By that act of Congress, the Federal Government is authorized to fix a maximum charge for rentals of residential property in the " Defense-Rental Area " wherein this property is located (Regulation, § 1,

subd. [a]; 8 Federal Register 13914), and to hold those rents static as of March 1, 1943, "until changed by the Administrator" (Regulation, § 4, subd. [a]; 8 Federal Register 13915). Pursuant to subdivision (c) of section 1 of the same Regulation (8 Federal Register 13915), the terms of all leases, save the rents reserved therein, are continued in force (Regulation, § 2; 8 Federal Register 13915), and, although a tenant is rendered secure in his occupancy against dispossess (Regulation, § 6, subd. [a]; 8 Federal Register 13918), a landlord may remove his tenant not under lease when said landlord has an immediate compelling necessity to occupy the premises as a dwelling (Regulation, § 6, subd. [a], par. [6]; 10 Federal Register 11668).

The result of these provisions of law and regulations issued thereunder which have the force of law, is to place certain limitations upon the renting of real property for the purpose of meeting a national emergency. Those laws and regulations have become a part of every letting contract, the same as if they were expressed therein.

It would seem then that "uncertainty", that malady usually fatal to a contract, has been relieved in this instance by the intervention of Congress when it "froze" plaintiff's rent at $80 a month, which was the rent paid pursuant to the lease on March 1, 1943, the maximum rent date under the Federal legislation.

The present state of the law grafts upon the phrase "at a rental price to be agreed upon", of the extension clause, the prohibition "but not to exceed $80 a month" which is the legal effect of the rent "freezing" regulation upon the lease herein and all of its provisions.

Uncertainty is not completely eliminated from the extension clause by force of the Federal law. In theory there remains the uncertainty of the rent "to be agreed upon" below $80 a month. A court may not close its eyes to the truism that a landlord's proper objective should be and is to obtain the highest rent that a tenant under all the circumstances can afford to pay for the use of his property. When, therefore, a tenant's option extension clause in a lease contains a ceiling (implied or constructive in this instance) upon the rent to be charged for the extended period and the tenant is willing to pay that ceiling price, the landlord may not be heard to challenge that option clause otherwise void for uncertainty.

The complaint states a cause of action. Motion denied.