GUSTAVE KASE, Plaintiff, *v.* BESSIE COHEN, Defendant.

Supreme Court, Trial Term, Queens County, January 19, 1949 .

*David Haar* for plaintiff.

*Estelle Corcas Levy* and *John Hezekiah Levy* for defendant.

BELDOCK, J. Plaintiff, alleging a violation of a maximum rent order issued under regulations adopted pursuant to the Emergency Price Control Act of 1942, as amended (Act, § 205, subd. [e]; U. S. Code, tit. 50, Appendix, § 925), seeks to recover excess rents paid and asks for treble damages together with attorney's fees and costs.

On November 15, 1945, plaintiff as tenant entered into a written lease with defendant as landlord covering premises 536 West Market Street, Long Beach, New York, for a two-year period commencing December 1, 1945, and ending November 30, 1947, at an annual rental of $1,800, payable $150 monthly. Defendant failed to register the premises with the Office of Price Administration within thirty days after such renting, as required by section 7 of the Rent Regulation for Housing.

Plaintiff entered into possession paying the rental of $150 per month throughout the year 1946. As a result of a complaint made by plaintiff to the Office of Price Administration that the fixed rental reserved in the lease was excessive, a proceeding was instituted against defendant by the Area Rent Director.

On February 24, 1947, the rent director fixed the maximum rent at $70 per month retroactive to November 1, 1943, based upon comparable rent generally prevailing in the area on March 1, 1943, which was the maximum rental date fixed by subdivision (d) and paragraph (1) of subdivision (c) of section 5.

Thereupon defendant applied for a review of this order to the Housing Expediter (the successor to the Office of Price Administration Area Rent Director). On January 8, 1948, the Housing Expediter affirmed the order fixing the $70 maximum monthly rental. However, the order was amended and modified in three respects: (1) The retroactive effective date of November 1, 1943, was deleted and December 1, 1945, was substituted. A finding was made therein that under subdivision (d), section 5, the rent director had no authority to make a retroactive order as of November 1, 1943. (2) There was eliminated from the order the maximum rent of $70 for the four summer months in each of the years 1946 and 1947 commencing June 1st and ending September 30th. The premises were held to be exempt from rental control during these summer months on the ground that they were in a " resort housing area ". (3) A finding was also made that defendant had failed to file a timely and proper registration statement. As the premises were owner-occupied prior to December 1, 1945, the first rent obtained at the first leasing (after November 1, 1943) would ordinarily become the maximum rent applicable. Thus, the rent provided by the first leasing on December 1, 1945 ($150), would have become the maximum rent. However, the Housing Expediter found that as there was a failure to file a timely registration, this first rent of $150 was *subject to decrease* in the event that it was found to be higher than the prevailing area rent on March 1, 1943. He did so find and fixed it at $70 per month effective December 1, 1945.

This is the basis for plaintiff's claim for refund of $80 per month paid from December 1, 1945, to March 1, 1947 (excluding the four summer months free from rent control), which aggregates $880. Plaintiff also claims the return of the $150 paid as security on the signing of the lease as being in contravention of the rent regulation. Plaintiff asks treble damages together with reasonable attorney's fees and costs.

Defendant denies the overcharge; she pleads the one-year Statute of Limitations provided in the act as a bar to recovery of overcharges claimed prior to March 23, 1946, since the instant action was commenced on March 24, 1947; she also alleges a

counterclaim of $746.10, to which reference will be made later.

In support of the contention that no overcharge whatever was made, defendant argues in substance, as follows: (a) Admittedly, when the rent director's order of February 24, 1947, was issued fixing rent of $70 per month as of November 1, 1943, the $150 per month provided in the lease resulted in a monthly overcharge of $80, for which an action to recover under subdivision (e) of section 205 was available to plaintiff. (b) Upon review, the finding of overcharge was reversed when the retroactive date, November 1, 1943, was revoked and the effective date fixed at December 1, 1945. (c) While the order of January 8, 1948, decreased the rent to $70 per month, this did not render the initial transaction illegal. (d) The exemption of the summer months from rent control vitiates all claims of overcharge. Defendant urges that this exemption permits her to fix any sum as the " reasonable rental value " of the premises for the four summer months. Defendant fixes the rent for the four summer months at $1,240 in each year, or $2,480 for the eight summer months of 1946 and 1947. Adding to this the sum of $1,120 as the fixed maximum rental for the sixteen nonsummer months ($70 per month), defendant arrives at a total of $3,600 claimed as rent for the two years of the leasehold. Plaintiff having paid only the sum of $2,853.90, defendant claims a balance due of $746.10, which is the amount of the counterclaim.

I do not agree with defendant's claims above set forth and find, to the contrary, that there was an overcharge and that the Statute of Limitations is no bar to plaintiff's recovery.

Section 7 of the rent regulation compels a landlord to file a registration statement within thirty days after he has rented the premises.

Section 4 determines what the maximum rent shall be. That section reads as follows:

" *Maximum rents*. Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be: * * *

"(e) *First rent after* [*November 1, 1943*]. * * * Within 30 days after so renting the landlord shall register the accommodations as provided in section 7. The Administator may order a decrease in the maximum rent as provided in section 5 (c)."

Subdivision (e) of section 4 provides for the consequences resulting from the landlord's failure to file such registration statement. That section reads as follows: " If the landlord fails to file a proper registration statement within the time specified, the rent received for any rental period commencing on or

after the date of the first renting or November 1, 1943, whichever is the later, shall be received *subject to refund* to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5 (c) (1)." (Emphasis added.)

The order of January 8, 1948, did not " reverse " the order of February 24, 1947, as contended by defendant, nor did it eliminate any claim for overcharge. This order affirmed the previous order establishing $70 as maximum rent except that it made the order effective December 1, 1945, instead of retroactive to November 1, 1943. Admittedly, the " first rent " of December 1, 1945, became the maximum rent as urged by defendant. That rent, however, because of defendant's failure to file a registration statement, was subject to *decrease retroactively* by the Housing Expediter to the date of renting. Having failed to comply with the law by registering his accommodations, defendant's collections were only conditional and subject to refund if upon later inquiry it was ascertained that the rental charged was in excess of the maximum prevailing in the area. This is precisely what the Housing Expediter did find in his order of January 8, 1948.

A recent case decided by the Supreme Court of the United States (*Woods* v. *Stone,* 333 U. S. 472 [March 15, 1948]) presented an analogous situation. Stone, the owner of a house, rented it to Locke at $75 per month beginning August 1, 1944. Stone failed to file a registration statement within thirty days. He sold his house in April, 1945, and registration by the new owner disclosed the prior renting without registration. On June 28, 1945, the rent director reduced the rental from $75 to $45 per month, effective from the first rental. An action under subdivision (e) of section 205 was instituted by the Price Administrator. Writing for the court, Mr. Justice JACKSON said (pp. 474–475):

" Under the system of rent control as established, a landlord is required to register rented accommodations within thirty days after they are first devoted to that use. This brings notice to the control authority that the premises are within its official responsibility and provides data for quick, if tentative, determination as to whether the rental exacted exceeds the level permitted by the policy of Congress set out in the statute.

" But when, as in this case, the landlord does not comply with this requirement, there is likelihood that, as happened here, his transaction will be overlooked for some time or perhaps

escape scrutiny entirely. But the landlord is not allowed thus to profit from his own disobedience of the law. If he could keep the excess collections by thus retarding or preventing scrutiny of his contract, he would gain an advantage over all landlords who complied with the Act as well as over tenants whose necessity for shelter is too pressing to admit of bargaining over price. The plan therefore provides that, despite his failure to register, the landlord may continue to collect his unapproved price, but only on condition that it is subject to revision by the public authority and to a refund of anything then found to have been excessive.''

Also, at pages 477–478, appears the following language: '' By legislation and regulation in force before the collections were made, the landlord's own default in registering had rendered these payments conditional, subject to revision and to refund.''

In a concurring opinion (pp. 478–479) Mr. Justice FRANK-FURTER summed up the matter in this wise: '' The crux of the matter is that where a landlord rents new housing accommodations but, as here, disobeys the regulatory scheme and fails to file a registration statement, if he chooses to collect the rent that he himself has fixed, he can do so only contingently. The Administrator may catch up with him and fix what was the proper amount from the beginning. The excess is illegal and must therefore be refunded.''

I find this language decisive of the issue raised herein with respect to the overcharge.

Defendant's additional argument that there cannot be an overcharge because of the exemption of the summer months from rent control is likewise untenable. The lease entered into between the parties cannot be repudiated by defendant. She cannot arbitrarily fix the sum of $1,240 as '' reasonable rent '' for the summer seasons of 1946 and 1947. '' Reasonable rent '' is not an issue in this case. Plaintiff did not agree to pay '' reasonable rent '' — he agreed to pay the amount specified in the lease. At all times this was subject to reduction in the event that the rent exceeded the maximum rent fixed by the regulation.

I agree with Mr. Justice CUFF who held in *Huber* v. *Ruby* (187 Misc. 967, 970) (referring to the Rent Regulation for Housing) that: '' The result of these provisions of law and regulations issued thereunder which have the force of law, is to place certain limitations upon the renting of real property for the purpose of meeting a national emergency. *Those laws*

*and regulations have become a part of every letting contract, the same as if they were expressed therein.''* (Emphasis added.)

Should the defendant's contention be sustained, the object of the law and the orders of the rent director would be frustrated, for in that event defendant would obtain $3,600, the rental for the two years embodied in this lease, in spite of the order of the Housing Expediter that as to a portion of each year there was an overcharge to the extent of $80 per month made by this defendant. The lawmakers contemplated such a situation when subdivision (c) of section 1 was incorporated in the regulation. That section reads as follows: *'' Effect of this regulation on leases and other rental agreements.* The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with this regulation.''

Nor is the one-year Statute of Limitations of the Emergency Price Control Act, as amended, a bar to recovery here. Whatever conflict may have existed in the Circuit Court of Appeals as to whether the period of limitation started to operate from the time of the overcharge or from the date of failure to refund, such difference of opinion has now been resolved by the Supreme Court of the United States in the *Woods* case (*supra*). It is now clearly established that the one-year limitation period commences to operate not from the date of payment of the rent but from the date that a duty to refund was breached.

The orders which were not complied with in the instant case were made on February 24, 1947, and January 8, 1948, and the statute had not run when the suit was commenced on March 24, 1947.

The claim for treble damages is disallowed. Defendant has sustained the burden which the law places upon her by proving the allegations of her separate defense that her failure to file the registration statement or to obey the orders of the rent director was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation.

An item of $106.10 allegedly paid by plaintiff for repairs, for which a deduction from monthly rental checks was made, is in dispute. There is not sufficient evidence to support plaintiff's claim for these repair items and I find for the defendant on this issue.

From all of the credible evidence, I find:

(1) Plaintiff is entitled to recover overcharges of $80 per month from December 1, 1945, to May, 1946, inclusive, and from

October, 1946, to February, 1947, inclusive, or a total of eleven months aggregating $880. (2) I find in addition that plaintiff is entitled to a refund of $150 deposited as security for the payment of the last month's rent, the taking of which was illegal and in contravention of the rent regulation under subdivision (d) of section 2. (3) Defendant is entitled to a credit of $106.10 as above mentioned. (4) Defendant is entitled to an additional credit of $320. Subsequent to the order of February 24, 1947, and from March 1, 1947, to the termination of the lease, plaintiff paid $70 monthly. By virtue of the order of January 8, 1948, exempting the premises from summer control, defendant is entitled to $150 monthly from June through September, 1947, less the $70 paid for each of said months. (5) Plaintiff is awarded the sum of $350 as attorney's fees. The recovery by plaintiff makes it mandatory for this court to allow attorney's fees under the section here involved. That is so regardless of whether the judgment for plaintiff be for single or treble damages. (*Aldridge* v. *Aquilino,* 271 App. Div. 318; *Monahan* v. *Jacobs & Politi,* 187 Misc. 332; *Aronwald* v. *Sperber,* 184 Misc. 314; *Ward* v. *Bochino,* 181 Misc. 355, 359, affd. 268 App. Div. 814.)

Judgment for plaintiff for $603.90 together with statutory costs and attorney's fees in the sum of $350.