[No. 17085.   Department Two.   September 20, 1922.]

ADA YOUNG, *Respondent,* v. NELS NELSON, *Appellant.*[1]

SPECIFIC PERFORMANCE (·13-2) — CONTRACTS ENFORCIBLE — EXTENSION OF LEASE—RENT—COMPLETENESS OF AGREEMENT. Specific performance may be decreed of a provision in a five-year lease for an option to renew at such rental "as may then be agreed upon between the lessor and lessee," though there was no provision for arriving at an agreement as to the amount of the rent; since the provision was for the benefit of the lessee, which should not be defeated by an unreasonable demand, and the court in the exercise of its equity power could ascertain the reasonable rent that should be allowed.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered October 1, 1921, upon findings in favor of the plaintiff, in an action for specific performance, tried to the court and a jury. Affirmed.

*Poe & Falknor,* for appellant.

*F. W. Moore,* for respondent.

HOLCOMB, J.—This is an action by respondent for specific performance of an agreement for the extension of a lease, against appellant, which resulted in a decree of specific performance as prayed.

The complaint alleged that, on December 2, 1915, a lease was entered into between appellant and Andrew Young for the entire two upper stories of a certain building in Bremerton, and for the joint use and occupancy of the basement beneath the premises, the two upper stories to be used by the lessee for hotel and rooming purposes; that the lease contained the following provision, to wit:

"To have and to hold the said premises for a term of five years from the first day of March, 1916, to the first

[1] Reported in 209 Pac. 515.

day of March, 1921, at a monthly rental sum of one hundred twenty-five ($125.00) and no/100 dollars, with an option to the lessee herein at the expiration of this lease for an extension of this lease for a period of five (5) years thereafter at such rental as may then be agreed upon between the lessor and the lessee.''

The complaint further alleges that respondent is the wife of Andrew Young, now deceased, holding the lease under a duly probated nonintervention will. It is alleged that Andrew Young and respondent have at all times performed all of the conditions incumbent upon them under the terms of the lease. It is further alleged that, thirty days prior to the expiration of the term stated in the lease, the respondent, intending to exercise her option to extend the lease for a term of five years, gave notice that she wished to exercise the option contained therein, and requested appellant to consult as to what would be a reasonable rental; that appellant refused to recognize that provision of the lease, and demanded $225 rental for the month of April, 1921, which is alleged to be exorbitant and in violation of the terms of the lease; that she demanded that the lease be extended for a period of five years upon a reasonable rental, and that a reasonable rental therefor was the sum of $150 per month; that appellant refused that offer, and insisted upon $225 for the month of April, 1921, without stating terms as to the conditions of tenancy, and repudiated the terms of the lease aforesaid; that respondent had no adequate and complete remedy at law for the breach of appellant, since she was operating a hotel, depending largely upon its reputation for her income, and that any eviction on the part of appellant would injure her, and her remedy at law would be inadequate; that she was operating a hotel on the premises in accordance with the terms of the lease, and was in actual danger of eviction by appellant. She

prayed for a decree against the appellant requiring him
to specifically perform the agreements of his lease in
accordance with its provisions for a term of five years,
at a reasonable monthly rental to be fixed by the court
at $150 per month, and prayed for an injunction
*pendente lite* restraining the defendant from disturbing
her peaceful possession.

A demurrer to the complaint upon the grounds that
it did not state facts sufficient to constitute a cause of
action was overruled, and appellant answered, tender-
ing issue on all of the allegations of the complaint, ex-
cept that it was admitted that appellant and respondent
had endeavored to mutually agree, and that he de-
manded $225 per month rent, and that respondent was
willing to pay only $150 per month rent; that the sum
of $225 per month was reasonable rental; that the
parties had been unable to agree upon the rent, and
that no provision was made in the lease itself for any
procedure for fixing the rent in case of mutual dis-
agreement.

Upon the trial, the court summoned a jury to advise
him as to what would be a reasonable rent for the en-
suing five years, and, upon hearing the evidence, the
jury found that $150 per month would be a reasonable
rental for the ensuing term of five years.

The trial court thereupon made findings that $150
per month would be a reasonable rental for the ex-
tended term of the lease, and that respondent was en-
titled to have the lease extended for five years from
the first day of March, 1921, upon other terms and
conditions the same as in the original lease, and en-
tered judgment accordingly.

The errors assigned by appellant are grouped for
discussion into two fundamental questions, which are
the essential issues of the case: first, can the court

decree specific performance of a renewal contract where the question of the rental, by its terms, is such as the parties themselves shall fix, and cannot be made certain by means provided or contemplated by the contract itself? Second, assuming that the court has power to fix the amount of the rental, is the sum of $150 a reasonable monthly rental?

It is first asserted that the lease contained no provision by which the renewal rental could be made certain by means provided or contemplated in the lease itself, and can only be fixed by agreement of the parties. Our cases are cited to the effect that "courts of equity will not undertake to enforce the specific performance of an agreement unless its terms are such that it cannot be reasonably misunderstood. . . . The price or consideration to be paid is an essential ingredient of the contract, and, where it is neither ascertained or rendered ascertainable, the contract is void as incomplete and incapable of enforcement." *Huston v. Harrington,* 58 Wash. 51, 107 Pac. 874; *LeMarinel v. Bach,* 114 Wash. 651, 196 Pac. 22.

Another case cited by appellant, extensively quoted and stoutly relied upon, is that of *Livingston Waterworks v. City of Livingston,* 53 Mont. 1, 162 Pac. 381, L. R. A. 1917D 1074.

In the last cited case there was a provision for the renewal of a contract between the municipality and the waterworks company for supplying the city with water. The contract provided for an option by the city to purchase the waterworks at the end of twenty years. In the event the city did not elect to purchase the waterworks, the contract should be renewed. The renewal provision was in the following language: ". . . for twenty years longer upon such terms as are mutually agreed upon at that time, . . ." etc. The city re-

fused to enter into a renewal contract, and the water-works company sued it, alleging that it had spent large sums of money in the erection and maintenance of the waterworks plant, and that the city had required it to spend large sums of money in making additions and extensions to its system, and that the money was spent in reliance upon the provision requiring the city to renew the contract for twenty years additional; that appellant was willing to agree upon a fair, reasonable and just schedule of rates to form the basis of renewal, and to enter into a contract accordingly, but that the city declined and refused to make any effort to agree upon such rates, to the irreparable injury of the company. The city defended, among other grounds, upon that, that the provisions of the renewal agreement were not enforceable. The supreme court so held, and marshaled the cases for and against the proposition that, where the amount was left to be ascertained and no provision made for the method of ascertainment, the contract was so indefinite that it could not be enforced by the court.

We, however, have held to the contrary on a lease contract similar to this, in *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499. That case, appellant says, is distinguishable from this case, as that case hinged upon the question of whether the lease was void for lack of acknowledgment, and that the renewal of it was only incidentally involved. In that case the provision for renewal was as follows:

"This lease is made for a term of one (1) year from date market opens (with the privilege of two years' renewal at a rental satisfactory to both lessor and lessee), . . ."

Respondent, and the court below, relied upon the *Frye & Bruhn* case, and we think rightly. While the

language is somewhat different in the renewal provision in this lease, the effect is the same. In that case the language was that the rental should be *satisfactory* to both the lessor and the lessee, and in this case the language is that it shall be such rental as may be *then agreed* upon between the lessor and the lessee. The opinion in the *Frye & Bruhn* case discussed the decisions as to the meaning and effect of such a term as "satisfactory" under such a contract. We distinctly held in that case that the contract therein involved, being a contract of lease for one year, in writing and unacknowledged, and the agreement for a further term of two years from the expiration of the original term, upon rental satisfactory to both parties, must stand or fall as a whole; that, if properly executed and acknowledged, as required by law, it would be enforceable; that, not having been acknowledged, as the law required, it was void and unenforceable; that the tenancy under which appellant was in possession prior to October 1, 1910, was terminated on that date by a notice of vacation, and that appellant was not liable for the rent thereafter. We further held that the agreement for renewal would not be rendered unenforceable merely because the amount of rental for the renewal period was left to the satisfaction of both parties; but that respondent, upon demand of the appellant, at the expiration of the year, would be required to renew it at a reasonable rental.

Here, while the terms of the renewal agreement are upon "such rental as may then be agreed upon," and while its terms are not word synonyms with the term "satisfactory," they are equivalent to the same thing. The rental agreed upon between the parties would be, presumably, a rental satisfactory to both parties, and *vice versa,* a rental satisfactory to both parties should be agreed to by both.

Although the original lease contained no provision for means of determining what rental should be paid in the event of a disagreement of the parties, as by arbitration, or appraisal, or some such method, is the lessee to be left remediless? Even in many of the cases where a contract provided for arbitration as the method of ascertaining the consideration for a renewal, courts have held that arbitration will not be exclusive, but that the parties would have recourse to the courts. *Kaufmann v. Liggett*, 209 Pa. St. 87, 58 Atl. 129, 103 Am. St. 988, 67 L. R. A. 353. There are cases where the contract provides that the promisor's decision is final, and in such cases courts cannot require specific performance of such contract. *Parlin & Orendorff Co. v. Greenville*, 127 Fed. 55.

In such a case as this we consider the agreement for renewal one for the benefit of the lessee, otherwise it would not have been included in the lease. It may be assumed that the owner may always find a tenant for his premises, and therefore such a provision is not particularly for his benefit. The tenant is not always in such state, and often desires such a provision in his lease. Evidently, therefore, it was intended for the benefit of the lessee and may be supposed to have formed an inducement to the original letting. *Arnot v. Alexander*, 44 Mo. 25, 100 Am. Dec. 252.

Manifestly, therefore, there should be some method whereby the lessee may enforce the contract for his benefit. If the lessor refuse to renew upon a reasonable rental, may he thereby prevent an agreement between himself and the lessee? The lessee might presume, when the contract was entered into, that the lessor would be reasonable and would fix a reasonable rental for the extended term and renew the contract as provided upon such reasonable rental. In conformity with

the terms of the contract, he notifies the lessor that he is ready to renew for the extended term upon what he states to be a reasonable rental. The landlord refuses this rental, refuses to renew the lease, and demands a rental which the lessee asserts to be unreasonable. In such a case, we do not believe that the lessor would be allowed to maintain an action for eviction or possession against the lessee claiming the right of possession for the extended term and offering a reasonable rental. This action is simply the reverse of such action by the lessor; an action to compel the lessor to recognize the extended lease upon reasonable terms. She offered to do equity. She offered to pay such rental as the court might find to be reasonable, and the court assumed jurisdiction under its equity power, ascertained the reasonable rental that should be allowed, and inserts it in the contract for renewal. We believe that the court had such power and that the case was rightly decided.

It is contended that, under the evidence, $150 per month is not a reasonable rental for the renewal period. The jury so found upon somewhat conflicting evidence, and we would say that the evidence was rather overwhelming upon the question in favor of the finding that $150 per month would be a reasonable rental.

The judgment is affirmed.

PARKER, C. J., MAIN, and HOVEY, JJ., concur.