[Civ. No. 14102. First Dist., Div. Two. Mar. 23, 1950.]

HAROLD S. WILSON, Appellant, v. JOSEPH F. WILSON
et al., Respondents.

Joseph A. Murphy and John Charles Houlihan for Appellant.

Fitzgerald, Abbott & Beardsley for Respondents.

NOURSE, P. J.—This is an action in three counts: One for an accounting after the wrongful dissolution of an oral agreement of partnership, the second for damages for the breach of a written agreement for substitution of copartners and the third for damages for fraud. On the first count the court found for plaintiff and in an interlocutory judgment ordered an accounting to the court. On the second and third counts judgment was for defendants. Plaintiff, Harold S. Wilson, appeals from the judgment rendered against him in said action and from the whole thereof, but assigns errors with respect to the decision on the second count only.

The second cause of action, the only one discussed by the parties, is in substance based on the following undisputed facts:

On or about February 15, 1938, plaintiff Harold S. Wilson and the defendants Joseph F. Wilson and Edwin E. Nicolai executed the following agreement:

"AGREEMENT FOR SUBSTITUTION OF COPARTNERS:

"This agreement made and entered into this 15th day of February, 1938, by and between Joseph F. Wilson and Edwin E. Nicolai, copartners doing business under the firm name

and style of Oakland Printing and Supply Co. at No. 306-12th Street, Oakland, California, hereinafter called the parties of the first part and Harold S. Wilson, the son of said Joseph F. Wilson, hereinafter called the party of the second part,

Witnesseth :

"That whereas the said parties of the first part are desirous that the aforesaid business be continued in the event of the retirement or demise of said Joseph F. Wilson, and

"Whereas, said Joseph F. Wilson has already by Will provided that in the event of his demise that his interest in and to said business shall go to his son, Harold S. Wilson, the said second party, and

"Whereas, it is the desire of said Edwin E. Nicolai, that the said second party, in the event of the retirement or demise of said Joseph F. Wilson, be accepted into the copartnership in the place and stead of his father, and

"Whereas, the said second party is desirous of at once entering into the employment of the said firm with the purpose and intent to prepare himself to take over his father's responsibility at the time either of the aforesaid contingencies happen.

"Now, Therefore, this agreement Witness,

"That for and in consideration of the said Harold S. Wilson, the said second party, giving up his present employment and entering into the service of the said copartnership and applying himself in the acquiring a knowledge of said business with a view of preparing himself to assume the aforesaid responsibility, the said parties of the first part hereby agree with said second party that he is to be accepted and/or taken into the said copartnership at the happening of either of the aforesaid events, and is to have all the right, title, and interest in and to said business held by his father, the said Joseph F. Wilson, at the time of his retirement or demise, with the understanding, however, that the salary that said second party is now to receive as an employee of said firm and later as a co-partner and/or monthly drawing account are to be determined by mutual consent of the parties hereto or the survivors of them and further it is agreed by and between said first party, Edwin E. Nicolai and the said second party that a new partnership agreement will be executed by them to supersede the one heretofore entered into between the said first parties under date of May 29th, 1943 [1934], by the terms of

which the said business is being conducted, at the time the second party, Harold S. Wilson, is taken into the said copartnership as hereinabove set forth and provided, with the view of continuing said business as a going concern.''

Contemporaneously the following rider was executed by plaintiff Harold S. Wilson and the defendant Joseph F. Wilson:

''February 15th, 1938.

''It is hereby understood and agreed to by Joseph F. Wilson, one of the first parties named in the attached agreement and Harold S. Wilson, the second party in said agreement, that the word retirement is to mean an assignment in writing of the said interest of said Joseph F. Wilson in said business and any vacation or absence from said business, either for a long or short duration, is not to be considered a retirement.''

Around the time of the signing of these agreements plaintiff began to work for the partnership chiefly as a sales manager, a short time on a commission basis only, then on a salary that was gradually increased and since April, 1941, with a share in the profits. The share of plaintiff was deducted from the profit share of his father so that defendant Nicolai retained his half of the profits. Wilson, Sr., was not active in the business since the summer of 1938. This whole arrangement was still in force when in August, 1943, plaintiff went into the Navy. During and partly because of plaintiff's activity in the partnership the gross business done and the profits made had increased greatly. After plaintiff's departure for the Navy he did not receive any salary from the partnership but in the beginning his share of the profits was continued. In the autumn of 1943 the relation between father and son became strained when the father wished to diminish the profit payments to the son, and at the end of January, 1944, all payments to plaintiff ceased. On April 19, 1944, the defendants Wilson, Sr., and Nicolai, without the knowledge of plaintiff, entered into a written agreement in which they dissolved the partnership, Nicolai retaining the business with all assets and liabilities, Wilson, Sr., to receive an amount of money payable in installments. This agreement was kept secret from plaintiff and when he found out and demanded that he be admitted into the business as a partner in the place of his father and that an accounting be made of the partnership property and profits such was refused. Defendant Nicolai continued to operate the business profitably.

The judgment for defendants is based on a conclusion

of law: ''That the instrument dated February 15, 1938, designated 'Agreement for Substitution of Copartners' is not a valid agreement at all because of uncertainty and invalidity in its terms, being in legal effect an agreement to make an agreement in the future, the terms of which future agreement were not presently, or at any time, decided upon.'' There is also a finding that Joseph F. Wilson did not retire from the partnership on or about April 19, 1944 (the date of the dissolution agreement).

Appellant's main contention, that the agreement of February 15, 1938, is not invalid for uncertainty seems meritorious. ''The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.'' (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546, 549 [213 P. 971]; *Roy* v. *Salisbury*, 21 Cal.2d 176, 184 [130 P.2d 706]; Civ. Code, §§ 1643, 3541.) Here the agreement was intended to protect plaintiff in his position and in his succession to his father's interest in the partnership. All three parties to it testified at the trial that such was plaintiff's desire and that defendants wished to comply. It is therefore clear that the agreement was considered by the parties as a final agreement the binding character of which was not dependent on the signing of a new partnership agreement at the time that plaintiff would become a partner. The signing of such a new agreement was logical when the parties bound by it changed, even if otherwise no changes in the terms were intended. The substitution agreement of February 15, 1938, does not show any intention to change the partnership terms except for the reservation made with respect to a salary and/or monthly drawing account of plaintiff. To uphold its validity the agreement must be construed as calling otherwise for terms identical with those of the old partnership agreement insofar as the parties would not voluntarily agree to changes. There is no extrinsic evidence whatever in the record that points to another intent. So understood, the provision with respect to the making of a new partnership agreement does not destroy the certainty of the substitution agreement.

Neither need the fact that plaintiff's salary and/or drawing account as partner is expressly left to future agreement have that effect. ''[A]t the making of a contract for a right, it may sometimes be impossible to determine details, or

the changing situation of affairs may indicate that details also must be subject to modification and, therefore, should not be definitely prescribed and should be left to settlement by an agreement or decree at the time the right is insisted upon. In such cases if the right is absolutely contracted for and the details are of a nature which courts may properly fix and settle, the courts should not hold the contract incomplete, but determine the right and also prescribe and settle the details.'' (12 Am.Jur. 521, 522; *Central Trust Co.* v. *Wabash, St. L. & P. Ry. Co.,* 29 F. 546, 558, affirmed *Joy* v. *St. Louis,* 138 U.S. 1, 43 [11 S.Ct. 243, 34 L.Ed. 843] ; *United States* v. *Swift & Co.,* 270 U.S. 124, 140 [46 S.Ct. 308, 70 L.Ed. 49] ; *Slade* v. *Lexington,* 141 Ky. 214 [132 S.W. 404, 32 L.R.A.N.S. 201, 205] ; *Young* v. *Nelson,* 121 Wash. 285 [209 P. 515, 30 A.L.R. 568] ; *Morris* v. *Ballard,* 16 F.2d 175 [56 App.D.C. 383, 49 A.L.R. 1461] ; *Hall* v. *Weatherford,* 32 Ariz. 370 [259 P. 282, 56 A.L.R. 903] ; *Edwards* v. *Tobin,* 132 Ore. 38 [284 P. 562, 68 A.L.R. 152] ; *Rainwater* v. *Hobeika,* 208 S.C. 433 [38 S.E.2d 495, 166 A.L.R. 1228].) The preceding cases, although of high authority, represent a minority view in that they hold valid contracts in which essential terms have expressly been left to future agreement. There is no such split of authority as to the validity of contracts where the matters left for future agreement are unessential, in which case each party will be forced to agree to a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract be enforced. (I Williston on Contracts (rev.ed.) § 48; *Palmer* v. *Aeolian Co.,* 46 F.2d 746, 753, citing Williston; *Goldsmith* v. *Sachs,* 17 F. 726, 729 [8 Sawy. 110] (C.C. Cal.) ; *T. H. Flood & Co.* v. *Bates,* 283 F. 364, 366; *Weed* v. *Lyons Petroleum Co.,* 294 F. 725, 731; *Spiritusfabriek Astra* v. *Sugar Products Co.,* 176 App.Div. 829 [163 N.Y.S. 516, 518] ; *Page* v. *Cook,* 164 Mass. 116 [41 N.E. 115].) A salary or a drawing account for a partner is concededly not an essential term of a partnership contract (Corp. Code, § 15018(f)). Neither the text of the substitution agreement nor any extrinsic evidence indicates that agreement as to this point was considered a condition precedent to the effectiveness of the right of plaintiff to substitution as a partner. It is a point that may be reasonably left open to modification under changing business conditions. Its indefiniteness should under the preceding authorities not invalidate the contract. As defendants prevented any necessity of agreement concerning the salary or drawing account it is irrelevant

whether if difficulties in that respect had developed there should have been a reasonable determination by the court or only an equal division of profits without salary or drawing account. Either solution is preferable to the destruction of a contract in reliance on which plaintiff helped for years to build up the partnership business.

The question whether or not the dissolution agreement of April 19, 1944, should be considered a retirement of defendant Wilson, Sr., entitling plaintiff under the substitution contract and its rider to succeed his father seems not decisive. If that agreement does not come directly under these provisions then it constitutes at any rate a breach of the clearly implied term of the substitution agreement that the father should not dispose of his interest in the partnership to another than his son at least not so long as defendant Nicolai was willing to continue the business. The implication is necessary as without it the agreement contrary to the intention of the parties would provide no security whatever for plaintiff and would be meaningless. ''In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'' (*Brown* v. *Superior Court*, 34 Cal.2d 559, 564 [212 P.2d 878]; *Nelson* v. *Abraham*, 29 Cal.2d 745, 750-751 [177 P.2d 931]; *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 771 [128 P.2d 665]; *Mervyn Investment Co.* v. *Biber*, 184 Cal. 637, 641-642 [194 P. 1037]; *Orton* v. *Embassy Realty Associates, Inc.*, 91 Cal.App.2d 434, 438-439 [205 P.2d 427]; *Brawley* v. *Crosby etc. Foundation, Inc.*, 73 Cal.App.2d 103, 112 [166 P.2d 392]; *Andersen* v. *La Rinconada Country Club*, 4 Cal.App.2d 197, 200-201 [40 P.2d 571]; 17 C.J.S. 779, and compare Civ. Code, § 1655.)

However all these considerations are premature because the judgment appealed from was itself premature. As a general rule no final judgment can be given until the final disposition of the entire cause including all its counts. (*de Vally* v. *Kendall de Vally O. Co., Ltd.*, 220 Cal. 742, 745 [32 P.2d 638]; *Mather* v. *Mather*, 5 Cal.2d 617 [55 P.2d 1174]; *Greenfield* v. *Mather*, 14 Cal.2d 228, 231 [93 P.2d 100]; *Bank of America* v. *Superior Court*, 20 Cal.2d 697, 701 [128 P.2d 357]; *Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 118 [199 P.2d 668]; *Provident Land Corp.* v. *Bartlett*, 53 Cal.App.2d 383 [127 P.2d 928].) In this case there was as to the first count only an interlocutory judgment ordering an accounting, which,

since the leading case of *Gunder* v. *Gunder*, 208 Cal. 559 [282 P. 794], has been uniformly held in this state not to constitute a final disposition and not to be appealable. Therefore no final judgment on any count should have been entered until the first count also was finally disposed of. There are certain exceptions to the rule that there can be but one final judgment in an action (*Nicholson* v. *Henderson*, 25 Cal.2d 375, 379 [153 P.2d 945]; 14 Cal.Jur. 951, Judgments, § 52), but in this jurisdiction we know of no exception which could be applicable to this case. It is true that the purported final judgment appealed from finally disposed of the second and third count and that the claims for relief stated in these counts differed and were based on a different factual basis from the one in the first count which was still pending. In some jurisdictions a separate final and appealable judgment may be entered, which finally disposes of one separate claim for relief, although more than one such claim is presented in the action (see *Reeves* v. *Beardall*, 316 U.S. 283 [62 S.Ct. 1085, 86 L.Ed. 1478], for civil procedure under federal rules.) In no California decision, however, has such exception been recognized. In *Mather* v. *Mather, supra,* and *Provident Land Corp.* v. *Bartlett, supra,* there are statements to the effect that the several counts contained only a single unseverable object, which statements might conceivably be considered to give some recognition to the rule later declared in *Reeves* v. *Beardall, supra* (31 Cal.L.Rev. 90, 95). However in *de Vally* v. *Kendall de Vally O. Co., Ltd., supra,* the leading case on this specific subject, the difference in subject matter between the several counts is equal to that in the present case and the sweeping expression of the rule in *Bank of America* v. *Superior Court, supra,* does not seem consistent with the acceptance of this rather extensive exception. Although *Nicholson* v. *Henderson, supra,* 25 Cal.2d at page 380 mentions the possibility that there may be other exceptions to the general rule in addition to the two discussed in that case, which are not applicable here, we find here no unusual situation in which postponement of the appeal until a final judgment as to all causes of action would cause so serious hardship or inconvenience as to require us to augment the number of existing exceptions.

Although the matter of appealability is not mentioned by counsel for either side it is our duty on our own motion to dismiss the appeal when we find that it is taken from a nonappealable judgment. (*Collins* v. *Corse*, 8 Cal.2d 123 [64 P.2d

137]; *David* v. *Goodman,* 89 Cal.App.2d 162, 165 [200 P.2d 568].)

■ Finally we call the attention of the parties to the fact that according to an affidavit of the defendant Nicolai contained in the transcript the defendant Joseph F. Wilson died on August 21, 1947, and that the record does not show that his personal representative has been substituted. (See Code Civ. Proc., § 385; rule 48, Rules on Appeal; 1 Cal.Jur., Abatement and Revival, §§ 35 and 36.)

Appeal dismissed without prejudice. The parties to bear their own costs.

Goodell, J., and Dooling, J., concurred.