**DREES FARMING ASSOCIATION, a North Dakota Corporation, Plaintiff-Appellee,**

v.

**Melvin THOMPSON, Jr., et al., Defendants-Appellants.**

Civ. No. 9230.

Supreme Court of North Dakota.

Nov. 19, 1976.

Mack, Moosbrugger & Leonard, Grand Forks, for defendants and appellants; argued by Jerome J. Mack, Grand Forks.

Shaft, McConn & Fisher, Grand Forks, for plaintiff and appellee; argued by Patrick W. Fisher, Grand Forks.

PAULSON, Justice.

This appeal is by the defendants [hereinafter the Remaindermen] from the judgment of the district court of Grand Forks County entered April 20, 1976, denying the Remaindermen's motion for an order dissolving the restraining order, upholding the validity of certain lease provisions, quieting title in Drees Farming Association, a North Dakota corporation [hereinafter Drees], to the property in question, declaring all claims of the Remaindermen adverse to Drees as null and void and inferior to Drees' claim, and dismissing Drees' counterclaim.

The facts herein are not disputed. On February 18, 1971, Edith M. Thompson leased to Drees three and one-half quarters of farm land located in Grand Forks County. The lease was drawn by Attorney James E. Leo, on behalf of Edith M. Thompson. The lease [hereinafter the 1971 lease] contained the following paragraph, which is the basis for the dispute herein:

"TO HAVE AND TO HOLD the above rented premises to the said party of the second part, its executors and assigns, for and during the full term of five (5) farming years from and after the 1st day of April, 1971, and continuing to the 1st day of December, 1975. The lessee has the option to lease this land for an additional five (5) year contract, terms to be negotiated at the time of renewal, and the lessee has the option of matching any other bonafided [*sic*] offer."

This lease further provided for an annual rental of $7,700.00.

On June 10, 1971, Edith M. Thompson conveyed said real property by warranty deed to her sons and daughter, the Remaindermen herein, reserving a life estate in herself.

By an order of the county court of Grand Forks County dated February 21, 1974, Edith M. Thompson was declared incompetent and the First National Bank of Grand Forks was appointed as her guardian.

On July 25, 1975, the First National Bank of Grand Forks, as guardian for Edith M. Thompson, executed, pursuant to the option to renew contained in the 1971 lease, a renewal of said lease for a term of five crop years from the first day of December, 1975, for an annual rent of $12,000.00.

Edith M. Thompson died on October 23, 1975.

This action was commenced by Drees to determine the respective rights to possession of said real property. Two issues are raised for our consideration: (1) is the option to renew contained in the 1971 lease an enforceable option to renew such lease?; and (2) was such option exercised so as to bind the Remaindermen?

## I. IS THE OPTION TO RENEW CONTAINED IN THE 1971 LEASE AN ENFORCEABLE OPTION TO RENEW SUCH LEASE?

▮▮▮ Rules of construction relating to contracts generally govern with reference to the construction of a lease. *Anderson v. Blixt,* 72 N.W.2d 799, 804 (N.D.1955). In *Hughes Realty Company v. Breitbach,* 98 N.W.2d 374, 376 (N.D.1959), this court stated:

"It is fundamental that courts will not enforce a contract which is vague, indefinite, or uncertain, nor will they make a new contract for the parties."

However, our interpretation of a contract's provisions is to "give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful". § 9–07–03, N.D. C.C. Further, this court will give a contract

". . . such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." § 9–07–08, N.D.C.C.

In *Hughes, supra* 98 N.W.2d at 377, this court stated:

"According to the great weight of authority, a lease ordinarily is construed against the lessor in case of ambiguity. 32 Am.Jur., p. 133, Sec. 128.

"Therefore, in construing the provisions in the lease here before the court relative to the option to renew, any uncertainty in the language of the option must be construed in favor of the tenant and against the lessor. The lessor had the power to incorporate terms and conditions in his own favor and, if he neglected to do so, he alone is responsible. [Citations omitted.]

.    .    .    .    .

"The law does not favor, but leans against, the destruction of contracts because of uncertainty, and it will, if feasible, so construe an agreement as to carry into effect the reasonable intention of the

parties, if that can be determined. [Citations omitted.]

". . . If there is uncertainty and ambiguity, it should be construed against the landlord or the party granting the option privilege.

"We believe that the provision for renewal must be deemed to contemplate the same terms of rental as for the previous term; otherwise the privilege for renewal would be meaningless and would be mere idle words. The option to renew, instead of being with the tenant where it clearly belongs, would be with the landlord since he could easily demand rent at a prohibitive figure and make the option to renew worthless and of no effect."

■ In the instant case, the option to renew contained in the 1971 lease provided:

". . . The lessee has the option to lease this land for an additional five (5) year contract, terms to be negotiated at the time of renewal, and the lessee has the option of matching any other bonafided [sic] offer."

The trial court found the foregoing to be a valid and enforceable provision. We agree.

In the instant case, the Remaindermen contend that the language of the option to renew of the 1971 lease, i. e., "terms to be negotiated at the time of renewal", implies that more than just the annual rent was left to be negotiated. They assert that the manner, method, and mode of payment and the rights and duties of the tenant with respect to the care and cultivation of the land involved also remain to be negotiated. We find no merit in such contention.

The renewal clause was incorporated into the 1971 lease for the benefit of the lessee (Drees) and, since any ambiguity or uncertainty is construed in favor of the lessee where the lease is prepared by the lessor, we find that the parties intended the use of the word "terms" used in the option provision in the 1971 lease to refer only to the annual rent of the renewal period. This interpretation is reinforced by the fact that both the description of the land and the term for which such land is to be rented are both specified in the option provision of the 1971 lease renewal clause—leaving the amount of the annual rent as the only major lease provision not specified in such option to renew. Such interpretation is further buttressed by the fact that the manner, method, and mode of payment, as well as the rights and duties of the tenant with respect to the care and cultivation of the land involved, are specified in the 1971 lease in a general, ordinary manner, making no unusual or unique demand upon the tenant, indicating that the parties did not intend to revise such provisions. To hold otherwise would make the option of renewal meaningless—the privilege of the option to renew, instead of being with the tenant where it clearly belongs, would be with the landlord since he could easily demand prohibitive conditions which would make the option to renew worthless and of no effect.

■ In *Hughes Realty Company v. Breitbach, supra* 98 N.W.2d at 378, this court stated that while the question of

". . . whether an option agreement for renewal of a lease, which leaves the renewal rental to be fixed by future agreement between the parties, is enforceable, or whether it is void because of uncertainty, has never been definitely determined in this State, it is not necessary to pass upon that question in this case."

However, in the instant case we find it necessary to determine the enforceability of such a renewal provision.

This court pointed out, in *Hughes, supra* 98 N.W.2d at 376, that there was a

". . . very respectable minority which holds that a renewal covenant in a lease, which leaves only the rental to be determined by agreement of the parties, is not void for uncertainty because reasonable rent can be determined."

Although still a minority view, the common law seems to be moving in the direction of enforcing provisions for the renewal of a lease at a rental to be fixed by subsequent agreement of the parties, as evidenced by several recent cases. *Moolenaar v. Co-Build Companies, Inc.,* 354 F.Supp. 980, 982 (D.C. V.I.1973); *Cassinari v. Mapes,* 91 Nev. 778, 542 P.2d 1069, 1071 (1975); *Playmate Club,*

*Inc. v. Country Clubs, Inc.,* 62 Tenn.App. 383, 462 S.W.2d 890, 893 (1970); *see* 58 A.L.R.3d 500, § 4 (1974). We are persuaded that the better view is to enforce such provisions for lease renewal by allowing the courts to determine a reasonable rental amount, pursuant to § 9–05–07, N.D.C.C. As was stated in *Moolenaar, supra* 354 F.Supp. at 982–983:

> "A number of policy considerations support this result. First, it will probably effectuate the intent of the parties better than would striking out the clause altogether. A document should be construed where possible to give effect to every term, on the theory that the signatories inserted each for a reason and if one party had agreed to the clause only in the secret belief that it would prove unenforceable, he should be discouraged from such paths. Secondly, a renewal option has a more sympathetic claim to enforcement than do most vague contractual terms, since valuable consideration will often have already been paid for it. The option of renewal is one factor inducing the tenant to enter into the lease, or to pay as high a rent as he did during the initial period. To this extent the landlord benefited from the tenant's reliance on the clause, and so the tenant has a stronger claim to receive the reciprocal benefit of the option. See *Young v. Nelson,* 121 Wash. 285, 209 P. 515, 30 A.L.R. 568 (1922). Finally, I might take note of the policy of construing ambiguities in lease agreements against the landlord, or, with more theoretical justification but little difference in practical result, against the party responsible for drafting the document."

The minority position also reflects the modern trend in contract law to allow courts to supply omitted terms whenever there exists a reasonable basis for their determination.[1]

■ In the instant case, the option to renew contained in the 1971 lease also provides "and the lessee has the option of matching any other bonafided [*sic*] offer". We find the intended meaning of this clause to also be ambiguous and uncertain, thus calling for the application of the rules of lease construction set out earlier herein which require that it be construed in favor of the lessee. Because "the lessee has the option", we find such clause to have been intended as an alternative method of setting the annual rent for the renewal term at the option of the lessee (Drees) in the event the parties could not agree and the lessee (Drees) chose not to seek a judicial determination of a reasonable annual rent.

The Remaindermen contend that such option to match any other bona fide offer was intended to be a preemptive right to rent upon the acceptance of a bona fide offer by the landlord. We disagree. Such an interpretation would resolve the phrase's ambiguity in favor of the lessor, contrary to our policy favoring the lessee stated herein. A preemptive right to rent carries with it no right of enforcement unless the landlord actually accepts a bona fide offer to rent the land, whereas an option necessarily carries with it the right to compel the necessary performance once the holder exercises his option.

## II. WAS THE OPTION EXERCISED SO AS TO BIND THE REMAINDERMEN?

■ The Remaindermen contend that even if the option to renew contained in the 1971 lease is valid and enforceable, the annual rent agreed to by the First National Bank of Grand Forks as guardian for Edith M. Thompson on July 25, 1975, is not binding on the Remaindermen because they were not parties to such agreement.

■ This court notes that a life tenant cannot make a lease which will extend beyond the life estate or confer greater rights upon his lessee, as against the holders of future interests, than those which he him-

---

1. North Dakota statutory provisions granting the courts such power to supply omitted terms include, but are not limited to: Section 9–05–07, N.D.C.C. (omitted price); Section 9–07–22, N.D.C.C. (omitted time for performance); Section 41–02–11(3), N.D.C.C. (2–204, U.C.C.) (one or more omitted terms); Section 41–02–22, N.D.C.C. (2–305, U.C.C.) (omitted price); and Section 41–02–28(1), N.D.C.C. (2–311, U.C.C.) (omitted particulars of performance).

**888**

self possessed. *See* 31 C.J.S. Estates § 54; 171 A.L.R. 489 (1947); and 4 Thompson on Real Property § 1896 (1961). However, in the instant case, Drees' option to renew its lease was granted by Edith M. Thompson on February 18, 1971, at which time she still held said real property in fee simple. The Remaindermen did not acquire their future interest until June 10, 1971, and thus took subject to Drees' option to renew. The only agreement made by Edith M. Thompson in the capacity of a life tenant was the setting of the rental amount for the renewal term on July 25, 1975. The Remaindermen ask whether such agreement made only by the life tenant is binding after the death of the life tenant.

We find the life tenant's agreement setting the rental amount for the renewal term to be binding on the Remaindermen where such option to renew provided that renewal rental was to be fixed by the future agreement of the lessor and the lessee and where such Remaindermen took their future interests subject to such option to renew. We find it necessary to so find to avoid increasing the bargained-for burden on the lessee in cases where the Remaindermen's future interests do not become possessory during the life of the lessee's estate for years; and to avoid the uncertainty and expense of new negotiations and possible litigation as would be necessary in cases such as the one at bar.

For the reasons stated herein, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.