JOSEPH MARTIN, JR., DELICATESSEN, INC., Appellant, v HENRY
D. SCHUMACHER, Respondent.

Second Department, August 6, 1979

### APPEARANCES OF COUNSEL

*Flower & Plotka (Edward Flower* of counsel), for appellant.

*George W. Lipp, Jr.,* and *David S. J. Rubin* for respondent.

### OPINION OF THE COURT

LAZER, J.

The issue on this appeal is whether an option to renew a lease at "rentals to be agreed upon"—classical language of an "agreement to agree"—is enforceable in this State. Frustrated in its effort to effect a renewal under the mentioned clause, the tenant instituted an action to compel its performance and the landlord reacted with a holdover proceeding in the District Court to regain possession of the premises. The appeals are from Special Term's order granting the landlord's motion for summary judgment dismissing the complaint on the ground that the agreement was unenforceable, and from a further order of the same court denying the tenant's motion to consolidate the eviction proceeding with the specific performance action.

The option clause in issue is contained in paragraph 30 of the lease and reads: "The Tenant may renew this lease for an additional period of five years at annual rentals to be agreed

upon; Tenant shall give Landlord thirty (30) days written notice, to be mailed certified mail, return receipt requested, of the intention to exercise such right."

The premises involved is a delicatessen store located in a building owned by the defendant in Sayville, Long Island. When plaintiff purchased the delicatessen business in 1958 it entered into a 15-year lease with the owner of the building. The defendant subsequently acquired the property and when the original lease expired in 1973 he and the plaintiff entered into a five-year lease which provided for monthly payments that increased from $500 to $650 over the term and contained the provision now in dispute. In September, 1977 defendant wrote to plaintiff that he did not intend to renew the lease and plaintiff promptly responded that it intended to exercise the right to renew. The defendant's reply was that under the renewed lease the rent would commence at $900 per month for the first two years, increase to $1,200 monthly for the next two, and rise ultimately to $1,500 in the last year. He also specified additional terms to be inserted in the renewal lease which placed significant new burdens upon the tenant. Following further correspondence between the parties, plaintiff retained an appraiser to evaluate the "fair market rental" of the premises and notified the owner that the appraiser's determination was that the fair and reasonable rental for the premises was a lesser sum than was currently being paid. In the present action to enforce the option plaintiff also seeks a determination that the fair and reasonable rental for the five-year renewal period is the amount proposed in its appraisal or such other sum as the court might set.

Plaintiff contends that it paid consideration for the right to renew, that it made significant expenditures in reliance upon that right, that over the years it built up a local business, that the majority of its customers live within walking distance of the store, and that it will suffer "a great, incalculable financial loss" if forced to vacate. It also argues that if the renewal clause is not enforceable under traditional strictures in New York this court ought to bring the law of New York into conformity with the more liberal approach evolved in other jurisdictions.

I

Although the traditional rule is that a provision for renewal or extension of a lease must be "certain" in order to render it

binding and enforceable, the modern trend is toward greater recognition of the enforceability of provisions which provide for renewal rentals to be agreed upon (see Ann. 58 ALR3d 500). In some jurisdictions, such renewal clauses are enforceable if the lease clearly establishes a "mode for ascertaining the future rental rate" (see *Slayter v Pasley,* 199 Ore 616, 620; see, also, *Pingree v Continental Group of Utah,* 558 P2d 1317, 1321 [Utah]) or expressly provides for a "reasonable rental" during the extension period *(State Road Dept. v Tampa Bay Theatres,* 208 So 2d 485, 487 [Fla]). In *Worthington & Son Mgt. Corp. v Levy* (204 A2d 334 [DC App]) the District of Columbia Court of Appeals held that an option to renew at a rent based upon "prevailing fair rentals" for similar property at that time contained a "definite criterion" for the ultimate determination of the rent and was enforceable (see, also, *Aycock v Vantage Mgt. Co.,* 554 SW2d 235 [Tex]; *Bechmann v Taylor,* 80 Col 68), and in *Greene v Leeper* (193 Tenn 153), a renewal clause providing for a rental to be agreed upon according to "business conditions" was deemed enforceable. *Fuller v Michigan Nat. Bank* (342 Mich 92) upheld a clause which provided for a rental to be agreed upon dependent on then "existing conditions."

In other jurisdictions renewal provisions calling for future agreement are enforceable if the court finds that the parties have agreed to confer at some future date for the purpose of agreeing on the specific terms of the rental, in which case a mutual agreement between the parties for a reasonable rental will be implied.

The "implied agreement" approach is exemplified in *Hammond v Ringstad* (10 Alaska 543); *Hall v Weatherford* (32 Ariz 370); *Cassinari v Mapes* (91 Nev 778); *Drees Farming Assn. v Thompson* (246 NW2d 883 [ND]); *Moss v Olson* (148 Ohio St 625); *Rainwater v Hobeika* (208 SC 433); *Playmate Club v Country Clubs* (62 Tenn App 383); *Young v Nelson* (121 Wash 285); and *Moolenaar v Co-Build Cos.* (354 F Supp 980)—cases where the word "reasonable" was read into renewal clauses which provided that rents were to be agreed upon and contained no mode for ascertaining the rent. In *Moolenaar (supra,* pp 982-983) the court rationalized its action as follows: "First, it will probably effectuate the intent of the parties better than would striking out the clause altogether. A document should be construed where possible to give effect to every term, on the theory that the signatories inserted each

for a reason and if one party had agreed to the clause only in the secret belief that it would prove unenforceable, he should be discouraged from such paths. Secondly, a renewal option has a more sympathetic claim to enforcement than do most vague contractual terms, since valuable consideration will often have already been paid for it. The option of renewal is one factor inducing the tenant to enter into the lease, or to pay as high a rent as he did during the initial period. To this extent the landlord benefited from the tenant's reliance on the clause, and so the tenant has a stronger claim to receive the reciprocal benefit of the option. *See Young v. Nelson,* 121 Wash. 285, 209 P. 515, 30 A.L.R. 568 (1922). Finally, I might take note of the policy of construing ambiguities in lease agreements against the landlord, or, with more theoretical justification but little difference in practical result, against the party responsible for drafting the document."

## II

In this State cases construing renewal clauses which provide for future agreement on all the terms of a lease (see, e.g., *Willmott v Giarraputo,* 5 NY2d 250; *Tracy v Albany Exch. Co.,* 7 NY 472; *Ancorp Nat. Servs. v Port Auth. of N. Y. & N. J.,* 50 AD2d 790; *Moran v Wellington,* 101 Misc 594) or which interpret renewal clauses providing for future agreement as to rent alone are not abundant. Renewal clauses involving rent to be agreed upon later have been ruled enforceable where the method for ascertaining the rent was specified, e.g., by arbitration (see *Van Beuren v Wotherspoon,* 12 App Div 421) or appraisal (see *Doyle v Hamilton Fish Corp.,* 144 App Div 131) or where the element of uncertainty was otherwise removed (see *Huber v Ruby,* 187 Misc 967, app dsmd 271 App Div 927). Essentially, the criteria utilized do not differ from those traditionally applicable to agreements to agree in other types of contracts (see, e.g., *Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069; *Boret v Vogelstein & Co.,* 188 App Div 605, affd 230 NY 573; cf. Uniform Commercial Code, § 2-305, subd [1], which codifies the above criteria). Doubtless, New York could be classified among the States which will enforce an agreement to agree on a future rental where "a mode for ascertaining the future rental" exists, but in this department of the Appellate Division renewal clauses containing an unadorned agreement to agree on a future rental have been deemed unenforceable for uncertainty (see

*Forma v Moran,* 273 App Div 818; *Huber v Ruby,* 188 Misc 1001, affd 272 App Div 779; *Sammis v Town of Huntington,* 104 Misc 7, affd 186 App Div 463).

*Forma, Huber* and *Sammis* appear to be the only published cases directly on point and were decided in this court more than 30 years ago. None of those cases imports the slightest suggestion either that the renewal clause in issue would have been enforceable had it contained the word "reasonable" or that the word could be read into the clause. In *Sammis,* a covenant in a lease containing an agreement to agree on rent for a renewal term was held unenforceable and was described by the court as "practically nugatory" (104 Misc 7, 9, *supra).* The *Forma* court held unenforceable for indefiniteness a lease which granted lessee a first option to renew at " 'renewal to be then agreed upon' " *(supra,* p 819); and in *Huber,* a lease granting the tenant the privilege of renewal " 'at a rental price to be agreed upon' ", was held unenforceable for uncertainty and was deemed not to bind the landlord "until and unless" an agreement on price was reached (188 Misc 1001, 1002, *supra).* For many years, the New York position respecting *all* agreements to agree was the same as that reflected in *Sammis, Forma* and *Huber* —they were unenforceable and the intent of the parties was immaterial (see, e.g., *Willmott v Giarraputo,* 5 NY2d 280, *supra; Keystone Hardware Corp. v Tague,* 246 NY 79; *Ansorge v Kane,* 244 NY 395).

Modern jurisprudence, however, focuses on the intent of the parties at the time of the making of the agreement. Thus subdivision (1) of section 2-305 of the Uniform Commercial Code rejects the formula that an agreement to agree is unenforceable and specifically permits parties, if they so intend, to "conclude a contract for sale even though price is not settled." Further, the intent of the parties is undeniably recognized as a controlling factor where an agreement provides for termination if future agreement on a material term is not reached. Subdivision (4) of section 2-305 of the Uniform Commercial Code, a subdivision which had no counterpart in the Uniform Sales Act, provides that if "the parties *intend* not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract." (Emphasis supplied.)

In contracts which make no provision for termination in the event future agreement is not reached the intent of the parties becomes an issue to be explored. In *May Metropolitan Corp. v May Oil Burner Corp.* (290 NY 260, 263) the Court of

Appeals reversed the judgment dismissing the complaint insofar as it sought enforcement of a contract containing a renewal clause providing that the precise "quota" amounts in a distributorship agreement were " 'to be mutually agreed upon.' " "We do not think", the court declared, "that our search for the meaning of this renewal clause comes to a full stop as soon as the phrase 'mutually agreed upon' is encountered." *(Supra,* p 265.) If the parties intended the agreement to be binding only if a mutually satisfactory agreement be reached, then, "until they arrive at that point," the court said, "there is no contract"—but it concluded that the plaintiff should have the opportunity of "exploring before a jury" the entire issue of intent *(supra,* pp 264, 265).

There is no practical reason why lease provisions providing for future agreement as to some material term of a contract should be excepted from the rule articulated in *May* or be treated as merely precatory. Renewal provisions in leases are deemed to be covenants rather than conditions (see 1 Rasch, New York Landlord and Tenant including Summary Proceedings [2d ed], § 300; *Orr v Doubleday, Page & Co.,* 223 NY 334, rearg den 223 NY 700) and "[a] lease like any other contract is to be enforced in accordance with the expressed intention of the contracting parties" *(Orr v Doubleday, Page & Co., supra,* p 341). If the renewal clause provides for termination of the lease upon a failure to agree (see *Coffin v Talman,* 8 NY 465; *Talman v Coffin,* 4 NY 134; *Sammis v Town of Huntington,* 104 Misc 7, affd 186 App Div 463, *supra),* the intention to terminate upon a failure to reach agreement can be determined as a matter of law. But if a provision for termination does not appear in the lease, the inquiry as to the meaning of the renewal clause need not come to a "full stop" and intent becomes an issue to be determined. Furthermore, there are significant manifestations of public policy which support judicial intervention to frustrate unconscionable conduct by property owners in connection with leases.

### III

The rule that leases are to be construed most favorably to the lessee *(455 Seventh Ave. v Hussey Realty Corp.,* 295 NY 166) is applicable to renewal clauses *(Burgener v O'Halloran,* 111 Misc 203) for such clauses are considered covenants inserted in the lease with the intent of giving the tenant the privilege of a renewal *(Orr v Doubleday, Page & Co., supra;*

*Tracy v Albany Exch. Co.,* 7 NY 472, *supra;* 1 Rasch, New York Landlord and Tenant including Summary Proceedings [2d ed], § 294). The traditional bias in favor of tenants in lease construction has been accentuated in recent years by the increasing willingness of the judiciary to protect lessees by striking "unconscionable" provisions in leases (see *Tai On Luck Corp. v Cirota,* 35 AD2d 380; *SKD Enterprises v L & M Offset,* 65 Misc 2d 612; *Seabrook v Commuter Housing Co.,* 72 Misc 2d 6; *Harwood v Lincoln Sq. Apts.,* 78 Misc 2d 1097). This judicial antagonism towards unconscionable lease provisions received legislative approbation with the enactment of section 235-c of the Real Property Law (L 1976, ch 828) which authorizes the courts to refuse to enforce a lease or lease clause which is unconscionable as a matter of law; to delete an unconscionable clause; or to limit the application of such clause to avoid an unconscionable result. In his message approving the legislation, Governor Carey noted its similarity to section 2-302 of the Uniform Commercial Code and declared: "This principle of fairness and restraint, which has been applicable to the area of sales for some time, should equally govern the conduct of the parties contemplating entering into the landlord and tenant relationship" (see McKinney's Session Laws of NY, 1976, p 2447).

Section 2-302 of the Uniform Commercial Code gives a court faced with an unconscionable contract the power to refuse enforcement of the contract or to strike or limit the unconscionable clause itself. The unconscionability principle, however, has no peculiar application to contracts for the sale of goods. "Courts can, if they choose, carry the principle over into real estate or any other kind of cases, quite apart from the Code" (Dobbs, Remedies, § 10.7, p 713).

If a rental rate provided for in a lease may be unconscionable and therefore call for judicial intervention under equitable principles or the statute (cf. *Euclid Ave. Assoc. v City of New York,* 64 AD2d 550), it takes no great leap in legal reasoning to conclude that a similar intervention is available to defeat oppressive conduct which works a forfeiture of a leasehold by thwarting renewal of the lease. It is an ancient principle of equity jurisprudence that equity abhors forfeitures and has jurisdiction to grant relief against their enforcement *(Rockaway Park Series Corp. v Hollis Automotive Corp.,* 206 Misc 955, affd 285 App Div 1140). Where leases are concerned this court has declared that "[t]he law does not favor forfeiture of

a leasehold or of its renewal" *(Vanguard Diversified v Review Co.,* 35 AD2d 102, 105; see, also, *J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392; *Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449; *Jones v Gianferante,* 305 NY 135; *Rizzo v Morrison Motors,* 29 AD2d 912). The jurisdiction to relieve against forfeiture is exercised on the principle that a party having a legal right shall not be permitted to avail himself of it for purposes of injustice or oppression *(Noyes v Anderson,* 124 NY 175).

Judicial action prevented a forfeiture in *Tai On Luck Corp. v Cirota* (35 AD2d 380, *supra),* where the renewal clause in issue provided for the future rental to be set by the landlord. When he fixed it at a rate five times higher than the original rent and then commenced a holdover proceeding to evict the tenant, our brethren in the First Department decided that judicial intervention was warranted to the extent of holding the rent arbitrary and unconscionable and directing the judicial fixation of an "appropriate rent." Although there are obvious differences between *Tai On Luck* and this case, if the instant tenant establishes that the intent of the parties was not to terminate the lease in the absence of an agreement on the renewal rent, the principles involved in both cases become quite similar. Both then involve lease renewals defeated by the unilateral and unconscionable conduct of the landlord in fixing or demanding oppressive rents. We conclude that in the present circumstances, if the tenant can establish its entitlement to renewal, judicial intervention to prevent injustice and to avoid a forfeiture would be appropriate.

IV

There remains the question of how the rent for the renewal term is to be ascertained should plaintiff succeed in carrying its burden on the intent issue. The court in *May Metropolitan Corp. v May Oil Burner Corp.* (290 NY 260, 266, *supra)* concluded that once there is a finding that the intent of the parties was not to terminate upon a failure to agree, proof on the issue of "reasonableness" should be taken "[i]f proof is available from which a standard of reasonableness can be worked out". This approach accords with the view expressed in section 230 of the second Restatement of Contracts (1973 ed, tentative drafts Nos. 1-7) that courts may supply a missing term which is "reasonable in the circumstances" (see, also, *Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069, *supra).* Equi-

table remedies are distinguished by "their flexibility, their unlimited variety" and "their adaptability to circumstances" (1 Pomeroy, Treatise on Equity Jurisprudence [5th ed], § 109, p 141). A court of equity has "the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties" *(id.),* and that power is not limited by the fact that no precedent on the precise question is discoverable; when grounds exist calling for the exercise of equitable power to furnish a remedy the courts will not hesitate to act *(Duncan v Laury,* 249 App Div 314; see, also, *Morris v Morris,* 138 Misc 682, affd 234 App Div 187, affd 260 NY 650; *Rice v Van Vranken,* 132 Misc 82, affd 225 App Div 179, affd 255 NY 541; *Piper v Hoard,* 107 NY 73; *Schwartz v Lubin,* 6 AD2d 108; *Ludlam v Riverhead Bond & Mtge. Corp.,* 244 App Div 113). The obvious remedy here is the determination of a reasonable rental by the court (see 1 Corbin, Contracts [1963 ed], § 29, p 94).

v

Thus, we hold that (1) a renewal clause in a lease providing for future agreement on the rent to be paid during the renewal term is enforceable if it is established that the parties' intent was not to terminate in the event of a failure to agree; and (2) under such circumstances, in the absence of another standard provided for in the agreement, the court is not precluded from fixing a reasonable rent. To the extent that *Forma v Moran* (273 App Div 818, *supra),* *Huber v Ruby* (188 Misc 1001, affd 272 App Div 779, *supra),* and *Sammis v Town of Huntington* (104 Misc 7, affd 186 App Div 463, *supra),* hold to the contrary, we now expressly overrule them.

The order of Special Term granting the defendant's motion for summary judgment and the order denying the plaintiff's motion to consolidate the District Court action with the Supreme Court action should be reversed and the defendant's motion should be denied and the plaintiff's motion granted.

SUOZZI, J. P. (concurring). I agree with so much of the majority's holding that a renewal clause of a lease containing "an unadorned agreement to agree on a future rental" should not, as older authorities held *(Forma v Moran,* 273 App Div 818; *Huber v Ruby,* 188 Misc 1001, affd 272 App Div 779; *Sammis v Town of Huntington,* 104 Misc 7, affd 186 App Div 463), be considered unenforceable for uncertainty as a matter

of law. Accordingly, I join with the majority in reversing the orders appealed from which, *inter alia,* granted the defendant landlord's motion for summary judgment dismissing the complaint.

Once having established the principle that an unadorned agreement to agree on a future rental is not unenforceable as a matter of law the majority takes the position that (1) the agreement will be enforceable only if it is established that the parties' intent was not to terminate in the event of a failure to agree and (2) if such an intent is proved, the court may fix a reasonable rent for the parties.

It is the majority's stress on the issue of intent that I find misplaced. In the very cases cited by the majority from other jurisdictions to support the "implied agreement" approach, those courts held as a matter of law that the parties agreed to fix a reasonable rental and immediately undertook the task of fixing a reasonable rent for the parties when the latter could not do so themselves *(Moss v Olson,* 148 Ohio St 625; *Playmate Club v Country Clubs,* 62 Tenn App 383; *Young v Nelson,* 121 Wash 285; *Moolenaar v Co-Build Cos.,* 354 F Supp 980).

We need look no further than the case of *Tai On Luck Corp. v Cirota* (35 AD2d 380), decided by the Appellate Division, First Department, for a similar approach by the courts of this State.

In *Tai On Luck (supra,* p 381) the tenant was given the right to renew a lease for an additional term of five years " 'at an annual rental rate to be determined by the landlord.' " The tenant exercised the option and the landlord determined that the rental for the renewal period was to be $2,000 per month, which was 500% over the original rent of $400 per month.

The Appellate Term held, and the Appellate Division agreed, that "if the rent to be determined by the landlord was construed as meaning any sum arbitrarily fixed by the landlord, his promise to renew was illusory and no promise at all since it was defeasible at the landlord's sole will by demanding a wholly unrealistic rent" *(Tai On Luck Corp. v Cirota, supra,* p 383). The Appellate Term found that the $2,000 monthly rental fixed by the landlord on its face appeared to be " 'arbitrary and unconscionable'" and remanded the proceeding " 'to determine whether or not the rent demanded by landlord was in fact arbitrary or unconscionable.' " *(Supra,* p 381.) The Appellate Term further directed that " '[i]f the rent

fixed by landlord is found to be arbitrary or unconscionable, the trial court shall fix a rent not unconscionable in the circumstances, upon proof of all relevant factors' " *(supra,* p 381).

In the case at bar the tenant, for all practical purposes, is at the mercy of the landlord since there will be no renewal unless he agrees to the latter's terms. Accordingly, as in *Tai On Luck,* in order to prevent injustice, avoid a forfeiture, and truly implement the underlying rationale of the majority's opinion, a remand is required whereby the trial court can fix the reasonable rent to be paid for the renewal of the lease.

O'CONNOR and GULOTTA, JJ., concur with LAZER, J.; SUOZZI, J. P., concurs in the result, with an opinion.

Orders of the Supreme Court, Suffolk County, dated October 11, 1978 and October 23, 1978, respectively, reversed, on the law, with $50 costs and disbursements, and defendant's motion is denied and plaintiff's motion is granted.